**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

|  |  |
|---|---|
| IN RE:  APARTMENT RENTAL SOFTWARE ANTITRUST LITIGATION | MDL No. |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407**

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................1

BACKGROUND ...........................................................................................................2

DISCUSSION ................................................................................................................8

I.    THE PANEL SHOULD TRANSFER AND CENTRALIZE THE ACTIONS PURSUANT

      TO SECTION 1407. .............................................................................................8

II.   THE NORTHERN DISTRICT OF TEXAS IS THE APPROPRIATE TRANSFEREE

      DISTRICT................................................................................................................12

      A.    Much of the Evidence Relevant to These Actions is Located in the Northern District

            of Texas...................................................................................................13

      B.    The Northern District of Texas Provides a Geographically Central and Convenient

            Forum for this Nationwide Litigation. ...................................................15

      C.    The Relative Caseloads Favor the Northern District of Texas. ............................16

      D.    The Absence of a Filed Case in the Northern District of Texas Does Not Disfavor

            Centralization in that District...............................................................17

      E.    The Panel Should Not Afford Deference to Plaintiffs' Choice of Forum. ............18

CONCLUSION.............................................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 7-Eleven Franchise Antitrust Litig.*,
    358 F. Supp. 286 (J.P.M.L. 1973)...................................................................................9

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
    598 F. Supp. 2d 1366 (J.P.M.L. 2009)....................................................................13, 14

*Alvarado v. Bank of America*,
    No. Civ. S-08-2862, 2009 WL 720875 (E.D. Cal. Mar. 17, 2009)...............................20

*In re Blue Cross Blue Shield Antitrust Litig.*,
    908 F. Supp. 2d 1373 (J.P.M.L. 2012).........................................................................10

*In re BP p.l.c. Secs. Litig.*,
    734 F. Supp. 2d 1376 (J.P.M.L. 2010).........................................................................17

*In re Chocolate Confectionary Antitrust Litig.*,
    542 F. Supp. 2d 1376 (J.P.M.L. 2008).........................................................................13

*In re Corn Derivative Antitrust Litig.*
    486 F. Supp. 929 (J.P.M.L. 1980)................................................................................17

*In re Cotton Yarn Antitrust Litig.*,
    336 F. Supp. 2d 1383 (J.P.M.L. 2004).........................................................................13

*In re Crop Inputs Antitrust Litig.*,
    543 F. Supp. 3d 1381 (J.P.M.L. 2021)...........................................................................9

*In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*,
    780 F. Supp. 2d 1379 (J.P.M.L. 2011)....................................................................12, 17

*In re Deere & Co. Repair Servs. Antitrust Litig.*,
    MDL No. 3030, 2022 WL 2133576 (J.P.M.L. June 1, 2022).............................9, 10, 11

*In re Direct Purchaser Plaintiff Beef Antitrust Litig.*,
    MDL No. 3031, 2022 WL 2126159 (J.P.M.L. June 3, 2022)..................................9, 11

*In re Elec. Books Antitrust Litig.*,
    846 F. Supp. 2d 1378 (J.P.M.L. 2011).........................................................................12

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
    277 F. Supp. 2d 1373 (J.P.M.L. 2003).........................................................................15

*In re Fretted Musical Instruments Antitrust Litig.*,
 657 F. Supp. 2d 1379 (J.P.M.L. 2009)....................................................................13

*In re Google Antitrust Litig.*,
 521 F. Supp. 3d 1358 (J.P.M.L. 2021)....................................................................11

*In re Korea Air Lines Co., Ltd. Antitrust Litig.*,
 528 F. Supp. 2d 1372 (J.P.M.L. 2007)....................................................................13

*In re Lithium Ion Batteries Antitrust Litig.*,
 923 F. Supp. 2d 1370 (J.P.M.L. 2013)....................................................................14

*In re On-Line Travel Co. (OTC)/Hotel Booking Antitrust Litig.*,
 908 F. Supp. 2d 1369 (J.P.M.L. 2012)....................................................................16

*In re Packaged Ice Antitrust Litig.*,
 560 F. Supp. 2d 1359 (J.P.M.L. 2008)....................................................................17

*In re Pork Direct & Indirect Purchaser Antitrust Litig.*,
 544 F. Supp. 3d 1379 (J.P.M.L 2021)..................................................................9, 11

*In re Silicone Gel Breast Implant Prods. Liab. Litig.*,
 793 F. Supp. 1098 (J.P.M.L. 1992)....................................................................18, 19

*In re Sw. Life Ins. Co. Sales Practices Litig.*,
 268 F. Supp. 2d 1377 (J.P.M.L. 2003)....................................................................18

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
 509 F. Supp. 3d 1375 (J.P.M.L. 2020)....................................................................11

**Statutes**

28 U.S.C. § 1407...........................................................................................9, 10

## INTRODUCTION

Defendants[1] renew their motion to transfer and centralize[2] 22 related actions (the "Actions")[3] now pending in 7 jurisdictions across the country to the Northern District of Texas for consolidated pretrial proceedings.  Each Action generally alleges Defendants have inflated prices of multifamily residential real estate leases above competitive levels through revenue management software provided by Defendant RealPage, Inc. ("RealPage").  All Actions include similar factual issues and assert substantially identical causes of action on behalf of overlapping putative nationwide, statewide, and/or city-specific classes and subclasses.  Most Actions have been filed in the last several weeks.  Plaintiffs have not yet served the majority of Defendants, no Defendant has yet responded to any Action, and most Defense counsel have not entered appearances in the Actions.  Centralization in a single district will prevent duplicative discovery and inconsistent pretrial rulings, and will conserve party and court resources.

The Panel should centralize these Actions in the Northern District of Texas because that

---

[1] Defendants include the following entities: Allied Orion Group; AvalonBay Communities, Inc.; Avenue5 Residential, LLC; BH Management Services, LLC; Bozzuto Management Company; CA Ventures Global Services, LLC; Camden Property Trust; Campus Advantage, Inc.; Cardinal Group Holdings LLC; ConAm Management Corporation; Cortland Partners LLC; Cushman & Wakefield, Inc.; Pinnacle Property Management Services; D.P. Preiss Company, Inc.; Equity Residential; Essex Property Trust, Inc.; Essex Management Corporation; FPI Management, Inc.; Greystar Real Estate Partners, LLC; Highmark Residential, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mission Rock Residential, LLC; Morgan Group, Inc.; Prometheus Real Estate Group; RealPage, Inc.; RPM Living, LLC; Security Properties Inc.; Sherman Associates, Inc.; The Michaels Organization, LLC; Interstate Realty Management Company; Thrive Communities Management, LLC; UDR, Inc.; Windsor Property Management; and ZRS Management, LLC (collectively, "Defendants").  Each signatory joins this filing as to the individual action or actions in which they are named.

[2] On December 8, 2022, some Defendants filed a corrected motion before the Panel.  *See* MDL 3066, *In re: RealPage Apartment Rental Software Antitrust Litig.*, Dkt. Nos. 1-4.  However, due to some Plaintiffs' voluntarily dismissing and re-filing the actions then existing outside the Western District of Washington (thus eliminating the multidistrict nature of the litigation), the Panel denied the motion as moot.  *See* MDL 3066, Dkt. No. 7.  Following the Panel's Order, at least 7 additional cases have been filed in 6 different jurisdictions by additional plaintiffs.  Thus, Defendants now renew their motion in light of the 22 Actions now pending in 7 jurisdictions across the country.

[3] *See* Schedule of Actions, filed concurrently herewith, for a listing of the 22 related Actions.

1

district has the strongest connection to this litigation, and the litigation will be handled most efficiently there.  RealPage, the central Defendant in each Action, is headquartered in the Northern District of Texas, and 14 other Defendants are headquartered in Texas as well.  In addition, over half of the Defendants across the Actions manage, operate or own property in Texas, and many Defendants have important employees located there.  Two of the Actions pending in the nearby Western District of Texas focus on alleged harm to renters in Dallas, 6 Plaintiffs are Texas residents, and another Plaintiff previously rented property in Texas.  Thus, many relevant witnesses and documents—including those of RealPage—are located in Texas. The Northern District of Texas also provides a geographically central and convenient forum for this nationwide litigation, and it enjoys docket conditions that allow efficient administration of these Actions.

Defendants respectfully request the Panel transfer these Actions to the Northern District of Texas for consolidated pretrial proceedings.

## <u>BACKGROUND</u>

Plaintiffs are alleged renters of multifamily residential units in Texas, California, Georgia, North Carolina, Florida, New York, Colorado, Washington, New Mexico, Washington D.C., Tennessee, and Massachusetts.  Plaintiffs have brought these Actions against RealPage—a Texas-based technology company that provides software solutions and data analytics to the real estate industry—and various multifamily property management companies, asserting violations of Section 1 of the Sherman Act based on the alleged use of RealPage's revenue management software.  The first-filed putative class Action, *Bason v. RealPage, Inc.*, was filed on October 18, 2022 in the Southern District of California.  *See Bason*, Complaint, No. 3:22-cv-01611 (S.D. Cal. Oct. 18, 2022).  Since *Bason* was filed, Plaintiffs have filed 30 additional Actions against

Defendants in jurisdictions across the country, including the Western District of Texas, the Northern District of California, the Central District of California, the Southern District of California, the Northern District of Illinois, the Southern District of New York, the Western District of Washington, the District of Colorado, the District of Massachusetts, the District of New Mexico, the District of Columbia, and the Middle District of Tennessee.[4]

Between December 2 and December 13, some Plaintiffs voluntarily dismissed 9 of these Actions and then re-filed 7 virtually identical complaints in the Western District of Washington.

---

[4] *See* Compl., *Navarro v. RealPage, Inc.*, No. 2:22-cv-01552 (W.D. Wash. Nov. 2, 2022); Compl., *Lazarte v. RealPage, Inc.*, No. 4:22-cv-06904 (N.D. Cal. Nov. 4, 2022); Notice of Voluntary Dismissal, *Lazarte*, No. 4:22-cv-06904 (N.D. Cal. Dec. 9, 2022), Dkt. No. 40; Compl., *Alvarez v. RealPage, Inc.*, No. 2:22-cv-01617 (W.D. Wash. Nov. 10, 2022); Compl., *Cherry v. RealPage, Inc.*, No. 2:22-cv-01618 (W.D. Wash. Nov. 11, 2022); Compl., *Bohn v. RealPage, Inc.*, No. 1:22-cv-06349 (N.D. Ill. Nov. 14, 2022); Notice of Voluntary Dismissal, *Bohn*, No. 1:22-cv-06349 (N.D. Ill. Dec. 6, 2022), Dkt. No. 6; Compl., *Godfrey v. Irvine Co.*, No. 8:22-cv-2082 (C.D. Cal. Nov. 15, 2022); Notice of Voluntary Dismissal, *Godfrey*, No. 8:22-cv-2082 (C.D. Cal. Dec. 6, 2022), Dkt. No. 33; Compl., *Silverman v. RealPage, Inc.*, No. 1:22-cv-09850 (S.D.N.Y. Nov. 18, 2022); Notice of Voluntary Dismissal, *Silverman*, No. 1:22-cv-09850 (S.D.N.Y. Dec. 8, 2022), Dkt. No. 6; Compl., *Johnson v. Irvine Co.*, No. 8:22-cv-02113 (C.D. Cal. Nov. 21, 2022); Notice of Voluntary Dismissal, *Johnson v. Irvine Co.*, No. 8:22-cv-02113 (C.D. Cal. Dec. 6, 2022), Dkt. No. 32; Compl., *Morgan v. Irvine Co.*, No. 8:22-cv-02136 (C.D. Cal. Nov. 23, 2022); Notice of Voluntary Dismissal, *Morgan*, No. 8:22-cv-02136 (C.D. Cal. Dec. 2, 2022), Dkt. No. 3; Compl., *Armas v. RealPage, Inc.*, No. 4:22-cv-07543 (N.D. Cal. Nov. 30, 2022);Notice of Voluntary Dismissal, *Armas*, No. 4:22-cv-07543 (N.D. Cal. Dec. 6, 2022), Dkt. No. 6; Compl., *Morgan v. RealPage, Inc.*, No. 2:22-cv-01712 (W.D. Wash. Dec. 2, 2022); Compl., *Crook v. RealPage, Inc.*, No. 3:22-cv-01907 (S.D. Cal. Dec. 2, 2022); Notice of Voluntary Dismissal, *Crook*, No. 3:22-cv-01907 (S.D. Cal. Dec. 2, 2022), Dkt. No. 3; Compl., *Armas v. RealPage, Inc.*, No. 2:22-cv-01726 (W.D. Wash. Dec. 6, 2022); Compl., *Johnson v. RealPage, Inc.*, No. 2:22-cv-01734 (W.D. Wash. Dec. 7, 2022); Compl., *Silverman v. RealPage, Inc.*, No. 2:22-cv-01740 (W.D. Wash. Dec. 8, 2022)*;* Compl., *Bohn v. RealPage, Inc*., No. 2:22-cv-01743 (W.D. Wash. Dec. 9, 2022); Compl., *Pham v. RealPage, Inc.*, 2:22-cv-01744 (W.D. Wash. Dec. 9, 2022); Compl., *Godfrey v. RealPage Inc.*, No. 2:22-cv-01759 (W.D. Wash. Dec. 13, 2022); Compl., *Weaver v. RealPage, Inc*., No. 1:22-cv-3224 (D. Colo. Dec. 14, 2022); Compl., *White v. RealPage, Inc*., No. 1:22-cv-12134 (D. Mass. Dec. 16, 2022); Compl., *Zhovmiruk v. RealPage, Inc.*, No. 2:22-cv-01779 (W.D. Wash. Dec. 16, 2022); Compl., *Vincin v. RealPage, Inc.*, No. 1:22-cv-1329 (W.D. Tex. Dec. 19, 2022); Compl., *Carter v. RealPage, Inc.*, No. 1:22-cv-01332 (W.D. Tex. Dec. 19, 2022); Compl., *Boelens v. RealPage, Inc.*, No. 2:22-cv-01802 (W.D. Wash. Dec. 20, 2022); Compl., *Moore v. The Irvine Company*, No. 2:22-cv-01826 (W.D. Wash. Dec. 27, 2022); Compl., *Augustson v. RealPage, Inc.*, No. 1:22-cv-00976 (D.N.M. Dec. 27, 2022); Compl., *Kramer v. RealPage, Inc.*, No. 1:22-cv-03835 (D.D.C. Dec. 29, 2022); Compl., *Precht v. RealPage, Inc.*, No. 1:22-cv-12230 (D. Mass. Dec. 29, 2022); Compl., *Watters v. RealPage, Inc.*, No. 3:22-cv-01082 (M.D. Tenn. Dec. 30, 2022); Compl., *Mackie v. RealPage, Inc.*, No. 1:23-cv-00011 (D. Colo. Jan. 3, 2023).

*See* Section II.E.  As of December 13, all Actions were pending in the Western District of Washington.  That did not last long.

On December 14, 2022, a new Plaintiff filed the *Weaver* Action in the District of Colorado.  *See* n. 4.  On December 16, other Plaintiffs filed the *White* and *Zhovmiruk* Actions in the District of Massachusetts and the Western District of Washington, respectively.  *Id.*  More new Plaintiffs filed the *Vincin* and *Carter* Actions in the Western District of Texas on December 19.  *Id.*  Between December 20, 2022 and January 3, 2023, more Plaintiffs filed 7 additional Actions across the country, including the District of Columbia and Tennessee.  *Id.*

As of the date of this Motion, there are 22 Actions pending in 7 districts—13 in the Western District of Washington, 2 in the Western District of Texas, 2 in the District of Massachusetts, 2 in the District of Colorado, 1 in the District of New Mexico, 1 in the District of Columbia, and 1 in the Middle District of Tennessee.  All of these except 1 purport to be putative class actions.

On December 19, 2022, a subset of the current Plaintiffs moved to consolidate 10 Actions pending in the Western District of Washington before Judge Lasnik.  *See Navarro*, Dkt. No. 67.  However, Plaintiffs' counsel in the *Boelens* Action – as well as in Actions pending in Colorado, Massachusetts, and Texas – intervened and noted that "because there are multiple cases on file in multiple federal courts, we do not know whether these cases will ultimately be consolidated, and if so, where."  Interested Party Response to Plaintiff's Motion to Appoint Interim Class Counsel, *Navarro* (W.D. Wash. Dec. 21, 2022), Dkt. 70 at 3.  Thus, certain Plaintiffs' counsel agree that these Actions should be consolidated but disagree on the appropriate forum.

While Defendants agree that centralization is critical to prevent duplicative discovery and inconsistent pretrial rulings, among other things, centralizing only a portion of the 22 cases will not avoid those problems.  Because full consolidation is far better than partial consolidation,

Defendants submit that the MDL process is better equipped to address that centralization.  The Panel should centralize these Actions in the Northern District of Texas.

The gravamen of the complaints in each Action is the same:  Defendant lessors and property managers allegedly agreed to artificially inflate the prices of multifamily residential real estate (and, in 1 Action, student housing) above competitive levels through the use of the RealPage revenue management software.[5]  Plaintiffs assert that, before utilizing RealPage's revenue management software, Defendants priced their leases competitively to maximize occupancy.[6]  Plaintiffs contend that Defendants supposedly shifted from making independent pricing and supply decisions to "collusion" when they agreed to use the RealPage revenue management software.[7]  Plaintiffs further allege RealPage's software has caused anticompetitive effects in the form of artificially higher prices and artificially reduced output.[8]  Defendants deny these allegations.

Plaintiffs in nearly all of the pending Actions assert claims for violations of Section 1 of the Sherman Act.[9]  Plaintiffs in several Actions also assert claims for violations of various state

---

[5] *See Navarro*, Compl. ¶¶ 1, 4, 10 (as to student housing leases); *Alvarez*, Compl.  ¶¶ 2, 7; *Cherry*, Compl. ¶¶ 3-4; *Morgan*, 2:22-cv-01712, Compl. ¶¶ 1, 11; *Armas*, 2:22-cv-01726, Compl. ¶¶ 5, 11; *Johnson*, 2:22-cv-01734, Compl. ¶¶ 1, 5; *Silverman*, 2:22-cv-01740, Compl. ¶¶ 3-7; *Bohn*, 2:22-cv-01743, Compl. ¶ 3; *Pham*, Compl. ¶¶ 10-11; *Godfrey*, 2:22-cv-01759, Compl. ¶¶ 1, 4; *Weaver*, Compl. ¶ 13; *White*, Compl. ¶ 13; *Zhovmiruk*, Compl. ¶¶ 1, 10; *Vincin*, Compl. ¶¶ 1, 13; *Carter*, Compl. ¶¶ 1, 13; *Boelens*, Compl. ¶¶ 11, 13; *Moore*, Compl. ¶¶ 1, 10; *Augustson*, Compl. at 5; *Kramer*, Compl. ¶¶ 1, 13; *Precht*, Compl. ¶ 4, 13; *Watters*, Compl. ¶¶ 1, 3, 13; *Mackie*, Compl. ¶¶ 1, 3, 13.
[6] *See, e.g.*, *Navarro*, Compl. ¶¶ 35, 47; *Morgan*, 2:22-cv-01712, Compl. ¶ 63; *Bohn*, 2:22-cv-01743, Compl. ¶¶ 4, 37; *Pham*, Compl. ¶¶ 10-11; *Weaver*, Compl. ¶¶ 6, 42; *Vincin*, Compl. ¶ 35.
[7] *See, e.g.*, *Alvarez*, Compl. ¶¶ 33-34, 38; *Bohn*, 2:22-cv-01743, Compl. ¶¶ 52, 59; *Zhovmiruk*, Compl. ¶¶ 4, 43; *Weaver*, Compl. ¶ 44; *Carter*, Compl. ¶ 50.
[8] *See, e.g.*, *Navarro*, Compl. ¶ 49; *Cherry*, Compl. ¶ 45; *Morgan*, 2:22-cv-01712, Compl. ¶¶ 12-13; *Silverman*, 2:22-cv-01740, Compl. ¶ 49; *White*, Compl. ¶ 13; *Carter*, Compl. ¶ 13.
[9] *See, e.g.*, *Navarro*, Compl. ¶¶ 82-99; *Alvarez*, Compl. ¶¶ 297-309; *Cherry*, Compl. ¶¶ 86-107; *Morgan*, 2:22-cv-01712, Compl. ¶¶ 133-137; *Armas*, 2:22-cv-01726, Compl. ¶¶ 99-111; *Johnson*, 2:22-cv-01734, Compl. ¶¶ 91-95; *Silverman*, 2:22-cv-01740, Compl. ¶¶ 91-96; *Bohn*, 2:22-cv-01743, Compl. ¶¶ 93-99; *Godfrey*, 2:22-cv-01759, Compl. ¶¶ 91-95; *Weaver*, Compl. ¶¶ 107-113; *White*, Compl. ¶¶ 100-105; *Zhovmiruk*, Compl. ¶¶ 94-98; *Vincin*, Compl. ¶¶ 97-102;

laws.  Specifically, Plaintiffs in the 2 Actions currently pending in the Western District of Texas allege state-law claims for violations of Section 15.05 of the Texas Free Enterprise and Antitrust Act of 1983.  *Vincin*, Compl. ¶¶ 103-109; *Carter*, Compl. ¶¶ 103-109.  Plaintiffs in the *Pham* Action assert violations of California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16700–16770 (*Pham*, Compl. ¶¶ 122-123), the Washington Consumer Protection Act (*id.* ¶¶ 113-121), and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201–.213.  *Id.* ¶¶ 124-129.  In the *Armas* Action, Plaintiff alleges a claim for violation of North Carolina Gen. Stat. §§ 75-1 to -145 (*Armas*, 2:22-cv-01726, Compl. ¶¶ 112-118) and a claim for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201–.213.  *Id.* ¶¶ 120-128.  In the *Weaver* and *Mackie* Actions, Plaintiffs assert violations of Section 104 of the Colorado Antitrust Act.  *Weaver*, Compl. ¶¶ 114-119; *Mackie*, Compl. ¶¶ 113-118.  And in the *White* and *Precht* Actions, Plaintiffs allege violations of Section 4 of the Massachusetts Antitrust Act, Mass. Gen. Laws Ann. Ch. 93, § 4.  *White*, Compl. ¶¶ 106-111; *Precht*, Compl. ¶¶ 106-111.  And Plaintiffs in 6 Actions allege common law claims for unjust enrichment.[10]

The Complaints assert these federal, state law, and common law claims on behalf of overlapping putative nationwide, statewide, and/or city-specific classes and subclasses of direct purchasers of multifamily residential real estate leases and/or student housing leases for property managed by companies participating in "RealPage's pricing software and/or lease renewal staggering software programs."[11]

---

*Carter*, Compl. ¶¶ 97-102; *Boelens*, Compl. ¶¶ 100-105; *Moore*, Compl. ¶¶ 111-115; *Kramer*, Compl. ¶¶ 99-105; *Precht*, Compl. ¶¶ 100-105; *Watters*, Compl. ¶¶ 95-101; *Mackie*, Compl. ¶¶ 106-112.

[10] *See Weaver*, Compl. ¶¶ 121-123; *White*, Compl. ¶¶ 113-115; *Vincin*, Compl. ¶¶ 110-112; *Carter*, Compl. ¶¶ 110-112; *Precht*, ¶¶ 112-115; *Mackie*, Compl. ¶¶ 120-122.

[11] *See Navarro*, Compl. ¶ 73 (nationwide class); *Vincin*, Compl. ¶ 78 (Austin, Dallas, and Houston classes); *Carter*, Compl. ¶ 78 (Austin, Dallas, and Houston classes); *Morgan*, 2:22-cv-01712, Compl. ¶ 124 (nationwide class); *Alvarez*, Compl. ¶ 290 (nationwide class); *Cherry*,

In almost half of the Actions, Plaintiffs allege the relevant geographic market is the United States.[12]  In addition to the alleged United States market, the 2 Actions currently pending in the Western District of Texas assert that the relevant geographic markets include the Greater Dallas Metro Area, Greater Austin Metro Area, and Greater Houston Metro Area.  *Vincin*, Compl. ¶ 78; *Carter*, Compl. ¶ 78.  Nine other Actions allege geographic markets elsewhere in the country in the greater metro areas of Seattle, New York City, Denver, Boston, Washington, D.C., and Nashville.[13]

Plaintiffs across the Actions allege that the relevant product market is the market for the lease of multifamily residential real estate, with the sole exception of the *Navarro* Action, which alleges a market for student housing.[14]

---

Compl. ¶ 77 (Seattle, Washington class); *Armas*, 2:22-cv-01726, Compl. ¶ 82 (nationwide class, North Carolina subclass, and Florida subclass); *Johnson*, 2:22-cv-01734, Compl. ¶ 82 (nationwide class); *Silverman*, 2:22-cv-01740, Compl. ¶ 82 (New York City metro area class); *Bohn*, 2:22-cv-01743, Compl. ¶ 74 (nationwide class); *Pham*, Compl. ¶¶ 92-93 (nationwide class as well as Washington, California, and Florida subclasses); *Godfrey*, 2:22-cv-01759, Compl. ¶ 82 (nationwide class); *Weaver*, Compl. ¶ 88 (Greater Denver metro area class); *White*, Compl. ¶ 81 (Greater Boston metro area class); *Zhovmiruk*, Compl. ¶ 85 (nationwide class); *Boelens*, Compl. ¶ 81 (Greater Seattle Metro Area subclass); *Moore*, Compl. ¶ 103 (nationwide class); *Kramer*, Compl. ¶ 80 (Greater Washington, D.C. Metro Area class); *Precht*, Compl. ¶ 81 (Greater Boston Metro Area class); *Watters*, Compl. ¶ 76 (Greater Nashville Metro Area class); *Mackie*, Compl. ¶ 87 (Greater Denver Metro Area class).

[12] *See Navarro*, Compl. ¶ 26 (including distinct geographic submarkets in college towns); *Alvarez*, Compl. ¶¶ 44; *Morgan*, 2:22-cv-01712, Compl. ¶ 58; *Armas*, 2:22-cv-01726, Compl. ¶¶ 104, 115-16, 123, 126 (including North Carolina and Florida submarkets); *Johnson*, 2:22-cv-01734, Compl. ¶ 31; *Bohn*, 2:22-cv-01743, Compl. ¶ 1; *Pham*, Compl. ¶¶ 44, 93, 106 (including California, Washington, and Florida submarkets); *Godfrey*, 2:22-cv-01759, Compl. ¶ 31; *Zhovmiruk*, Compl. ¶ 34; *Moore*, Compl. ¶  48.

[13] *See Cherry*, Compl. ¶¶ 30, 95 (Seattle); *Boelens*, Compl. ¶ 76 (Greater Seattle Metro Area); *Silverman*, 2:22-cv-01740, Compl. ¶ 36 (New York city Metro Area); *Weaver*, Compl. ¶ 84 (Greater Denver Metro Area); *White*, Compl. ¶ 76 (Greater Boston metro area); *Precht*, Compl. ¶ 76 (greater Boston metro area); *Kramer*, Compl. ¶ 76 (Greater Washington, D.C. Metro Area); *Watters*, Compl. ¶ 72 (Greater Nashville Metro Area); *Mackie*, Compl. ¶ 83 (Greater Denver Metro Area).

[14] *See Navarro*, Compl. ¶ 26; *Alvarez*, Compl. ¶ 44; *Cherry*, Compl. ¶ 30; *Morgan*, 2:22-cv-01712, Compl. ¶ 58; *Armas*, 2:22-cv-01726, Compl. ¶ 105; *Johnson*, 2:22-cv-01734, Compl. ¶ 31; *Silverman*, 2:22-cv-01740, Compl. ¶ 36; *Bohn*, 2:22-cv-01743, Compl. ¶ 1; *Pham*, Compl. ¶ 44; *Godfrey*, 2:22-cv-01759, Compl. ¶ 31; *Weaver*, Compl. ¶ 85; *White*, Compl. ¶ 77; *Zhovmiruk*, Compl. ¶ 34; *Vincin*, Compl. ¶ 74; *Carter*, Compl. ¶ 74; *Boelens*, Compl. ¶ 77;

All Actions are in their infancy.  In several Actions, Plaintiffs have served none of the Defendants, and in the others, Defendants have not yet responded to any of the Complaints.  The parties in these latter Actions have obtained orders suspending deadlines to respond to the Complaints until the coordination and transfer issues are resolved.

## DISCUSSION

### I.     THE PANEL SHOULD TRANSFER AND CENTRALIZE THE ACTIONS PURSUANT TO SECTION 1407.

The Panel has authority under 28 U.S.C. § 1407 to transfer "civil actions involving 1 or more common questions of fact [that] are pending in different districts" to a single district for consolidated or coordinated pretrial proceedings.  28 U.S.C. § 1407(a).  Consolidation is warranted when transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  *Id.*  These criteria are satisfied here.

*First*, the Actions share overlapping class definitions, common Defendants, and virtually identical claims under the Sherman Act.  Each Complaint alleges Defendants have suppressed or eliminated competition in violation of federal antitrust law by purportedly using RealPage's revenue management software to outsource pricing and supply decisions.  Because of these overlapping allegations, the discovery pursued in each of these Actions will address many of the same issues, including, among others: (i) whether Defendants have conspired to artificially inflate prices and/or artificially suppress supply of multifamily residential real estate leases from competitive levels through the use of RealPage's revenue management software; (ii) whether RealPage's revenue management software facilitates collusion among Defendant-lessors; (iii) the design and operation of RealPage's revenue management software; (iv) defining the relevant

---

*Moore*, Compl. ¶ 48; *Augustson*, Compl. at 4; *Kramer*, Compl. ¶ 76; *Precht*, Compl. ¶ 76; *Watters*, Compl. ¶ 72; *Mackie*, Compl. ¶ 83.

market(s); and (v) identifying competitors in the relevant market(s) and their market shares.

These issues make transfer under Section 1407 proper.[15]  Under Section 1407, "one or more common questions of fact" are sufficient to warrant centralization, and the Panel has consistently centralized cases that, as here, involve the same core antitrust allegations.  *See, e.g.*, *In re Digital Advertising Antitrust Litig.*, 555 Supp. 3d 1372, 1375 (J.P.M.L. 2021) (consolidating antitrust actions that shared "common factual questions" and alleged Sherman Act claims against search-engine company for anticompetitive behavior in market for online advertising); *In re Deere & Co. Repair Servs. Antitrust Litig.*, MDL No. 3030, 2022 WL 2133576, at *1 (J.P.M.L. June 1, 2022) (centralizing actions that asserted substantially identical claims under the Sherman Act and "share[d] factual issues arising from allegations that, through various anticompetitive practices, [Defendant] has monopolized the market for repair and maintenance services for . . . agricultural equipment"); *In re Direct Purchaser Plaintiff Beef Antitrust Litig.*, MDL No. 3031, 2022 WL 2126159, at *1 (J.P.M.L. June 3, 2022) (centralizing actions that "share[d] factual questions arising from plaintiffs' allegations that . . . defendants exploited their market power in this highly concentrated market by conspiring to limit the supply, and fix the prices, of beef sold in the U.S. wholesale market").[16]  The Panel should

---

[15] That each putative class action Complaint contains similar factual allegations shows there are "common questions" for purposes of consolidation or coordination under Section 1407.  "The criteria for a class determination pursuant to Rule 23 of the Federal Rules of Civil Procedure are different from the criteria for transfer pursuant to 28 U.S.C. § 1407," *In re 7-Eleven Franchise Antitrust Litig.*, 358 F. Supp. 286, 287 (J.P.M.L. 1973), and Defendants do not concede that commonality, adequacy, typicality, predominance, or any other class certification requirement in Rule 23 is satisfied.

[16] *See also In re Pork Direct & Indirect Purchaser Antitrust Litig.*, 544 F. Supp. 3d 1379, 1380 (J.P.M.L 2021) (centralizing actions that "share[d] factual questions arising from an alleged conspiracy, starting in or around 2009, among leading American pork producers to fix, raise, maintain, and stabilize the price of pork in the United States"); *In re Crop Inputs Antitrust Litig.*, 543 F. Supp. 3d 1381, 1382 (J.P.M.L. 2021) (centralizing actions involving "common factual allegations about defendants' anticompetitive conduct, including a group boycott of electronic sales platforms and price fixing in the manufacturing, wholesaling, and retailing of crop inputs").

transfer and consolidate the Actions for pretrial proceeding for the same reasons.[17]

*Second*, centralization and consolidation of the Actions in a single district for pretrial proceedings will avoid the inefficiency, expense, and risk of inconsistent rulings that would result from separate litigation of substantially similar cases across the country.  Without centralization, these 22 pending Actions would proceed separately in 7 districts from Texas to Massachusetts to Washington.  There is no dispute that transfer and consolidation will benefit both the courts and the parties.

Centralizing the pretrial proceedings in the Actions will reduce duplicative discovery and conserve the resources of the parties and the courts.  Because the Complaints share similar factual allegations and assert substantially identical legal claims, overlapping discovery will occur across the Actions if the cases are not consolidated.  For example, all Actions will require discovery from RealPage, the principal Defendant across all cases.  Plaintiffs in each Action can be expected to request many of the same documents and seek depositions of many of the same RealPage employees (and employees of all other common Defendants) related to the RealPage revenue management software and Defendants' use of that software.  Consolidation would eliminate such a duplication of efforts.  The Panel has repeatedly determined that centralization is appropriate in antitrust cases for precisely this reason.  *See, e.g.*, *In re Deere & Co. Repair Servs. Antitrust Litig.*, 2022 WL 2133576, at *1 (Centralizing actions "eliminate[s] duplicative

---

[17] The Actions that have been filed against Defendants are not identical, of course, but the differences do not undermine the basis for consolidation.  For example, as described above, at least 1 Action (*Navarro*) is focused on Defendants' alleged anticompetitive conduct through the use of RealPage's revenue management software as it relates to student housing, not residential multifamily real estate leases.  A "complete identity of common factual issues" is not a prerequisite to transfer under Section 1407, "and the presence of additional facts or differing legal theories is not significant when the actions arise from a common factual core."  *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1376 (J.P.M.L. 2012).

discovery . . . and conserve[s] the resources of the parties, their counsel, and the judiciary.").[18]

The parties also would have to litigate—and multiple district courts would have to resolve—similar legal issues and discovery disputes multiple times.  Centralization will avoid the risk of inconsistent pretrial rulings, including on motions to dismiss, discovery disputes (if the cases survive the pleadings stage), class certification, summary judgment, *Daubert* issues, and other pretrial matters.  That risk is especially acute where, as here, the Complaints assert substantially identical claims based on certain common allegations and on behalf of overlapping putative classes whose interests are ostensibly represented in multiple jurisdictions.  All Actions seek to certify nationwide, statewide, and/or city-specific classes and subclasses related to Defendants' use of RealPage's software.  Absent consolidation, the risk of inconsistent rulings among the Actions is substantial.  The Panel often finds that this risk supports centralization in antitrust litigation.  *See In re Deere & Co. Repair Servs. Antitrust Litig*., 2022 WL 2133576, at *1 (Centralizing actions will "prevent inconsistent pretrial rulings, particularly with respect to class certification . . . ."); *In re Google Antitrust Litig.*, 521 F. Supp. 3d 1358, 1360 (J.P.M.L. 2021) (Centralizing actions will "prevent inconsistent pretrial rulings, including with respect to class certification and *Daubert* motions . . . ."); *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 509 F. Supp. 3d 1375, 1376 (J.P.M.L. 2020) (same).

Transfer is particularly appropriate here because all Actions are in their procedural infancy.  Defendants have not yet been served in over half of the 22 Actions, nor have

---

[18] *See also In re Direct Purchaser Plaintiff Beef Antitrust Litig*., 2022 WL 2126159, at *1 (If actions were not centralized "the individual direct purchaser actions likely would involve duplicative discovery . . . ."); *In re Digital Advertising Antitrust Litig*., 555 Supp. 3d at 1375 (Centralization promote[d] "just and efficient" litigation by "eliminating duplicative discovery and avoiding the risk of inconsistent rulings on pretrial matters, particularly on discovery disputes . . . ."); *In re Pork Direct & Indirect Purchaser Antitrust Litig.*, 544 F. Supp. 3d at 1380 (Centralizing actions "will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary.").

Defendants responded to any of the Complaints.  In the Actions in which a Defendant has been served, the deadline to respond to the complaints in 5 such Actions has been indefinitely suspended and, in 2 such Actions, service was effected only recently and not all Defendants have been served.

In the *Alvarez*, *Navarro*, and *Cherry* Actions, the parties have submitted joint status reports regarding a proposed case schedule in response to the Court's order directing the parties to do so.  In each status report, Defendants stated that it would be premature to enter a case schedule at this time given the parties' dispute as to the appropriate venue for transfer and consolidation.  *See Alvarez*, 2:22-cv-01617, Dkt. No. 49; *Navarro*, 2:22-cv-01552, Dkt. No. 71; *Cherry*, 2:22-cv-01618, Dkt. No. 51.  No court has ruled on any motion, entered any case schedule or held a status conference.

Because the transferor courts have not yet taken or had to take any substantive actions in these cases, consolidation will not result in the duplication of efforts by the transferee court or result in any prejudice to Plaintiffs.  The Panel often grants centralization in instances where, as here, the underlying actions were in the early stages, finding that centralized proceedings provides efficiency and that transfer is not disruptive.  *See, e.g.*, *In re Elec. Books Antitrust Litig*., 846 F. Supp. 2d 1378, 1379 (J.P.M.L. 2011) (finding centralization appropriate where "[a]ll actions" had "not progressed beyond the filing of the complaints"); *see also, e.g.*, *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig*., 780 F. Supp. 2d 1379, 1382 (J.P.M.L. 2011) (granting centralization of 35 cases where, among other things, transfer would not be disruptive at the early stage of the actions).

## II.    THE NORTHERN DISTRICT OF TEXAS IS THE APPROPRIATE TRANSFEREE DISTRICT.

The Northern District of Texas is the most appropriate transferee district for these

Actions in light of the location of relevant evidence, the geographic convenience of the district, and its relative case load.

**A. Much of the Evidence Relevant to These Actions is Located in the Northern District of Texas.**

The Panel generally centralizes cases in a district where "pertinent documents and witnesses are likely located." *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 598 F. Supp. 2d 1366, 1368 (J.P.M.L. 2009); *see also, e.g.*, *In re Cotton Yarn Antitrust Litig.*, 336 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004) (centralizing cases challenging an alleged price-fixing conspiracy in a district where "documents and witnesses can likely be found"); *In re Korea Air Lines Co., Ltd. Antitrust Litig.*, 528 F. Supp. 2d 1372, 1373 (J.P.M.L. 2007) (doing the same "where discovery may be found"). Such evidence is typically located in the district in which the defendants are headquartered. *See, e.g.*, *In re Chocolate Confectionary Antitrust Litig.*, 542 F. Supp. 2d 1376, 1377 (J.P.M.L. 2008) ("Because defendant Hershey's worldwide headquarters are located there . . . relevant documents and witnesses are likely located in that area."). Moreover, where, as here, Plaintiffs allege a purported "hub-and-spoke" conspiracy, the Panel has centralized cases based on the location of the alleged hub's headquarters. *See, e.g.*, *In re Fretted Musical Instruments Antitrust Litig.*, 657 F. Supp. 2d 1379, 1381 (J.P.M.L. 2009) (determining the appropriate transferee district as "a convenient district for parties, witnesses, and access to documents" based on the location of the headquarters of Guitar Center, which was the alleged "hub" of the conspiracy).

Under these standards, the Northern District of Texas is the district in which the Panel should consolidate these Actions.

RealPage, which is headquartered in the Northern District of Texas near Dallas, is 1 of only 2 Defendants named in *each* of the pending Actions. The only other Defendant named in

each of the pending Actions, Greystar Real Estate Partners, LLC, also has substantial operations in the Dallas area.  And every Complaint alleges RealPage was at the center of the alleged conspiracy.  *See, e.g.*, *Pham*, Compl. ¶ 54 ("RealPage and Landlords mutually agree to accept the pricing matrix offered by RealPage and not compete on the price of rental units."); *Weaver*, Compl. ¶ 59 ("[Defendants] must agree to outsource daily pricing and ongoing revenue oversight to RealPage").  Though the Complaints are lacking in well-pleaded facts, some nonetheless allege in conclusory fashion that RealPage "facilitat[ed]" horizontal agreements among participating Lessors by "allowing Lessors to coordinate both pricing and supply."  *See, e.g.*, *Morgan*, 2:22-cv-01712, Compl. ¶ 5; *see also, e.g.*, *Vincin*, Compl. ¶ 3.  Plaintiffs' claims therefore invite central questions related to RealPage, and those questions inherently have stronger connections to the Northern District of Texas than to any other district.  And Plaintiffs can be expected to seek depositions of RealPage's employees, who largely will be located in the Northern District of Texas.

Further, the Northern District of Texas is the district in which most of the evidence is likely to be found, and, at the very least, no other district is likely to house more relevant materials than the Northern District of Texas.  In addition to RealPage, at least 14 other Defendants are headquartered in the State of Texas.[19]  *See, e.g.*, *In re Aftermarket Auto. Lighting Prods.*, 598 F. Supp. 2d at 1368 ("[S]everal defendants are headquartered within the Central District of California and accordingly pertinent documents and witnesses are likely located there."); *In re Lithium Ion Batteries Antitrust Litig.*, 923 F. Supp. 2d 1370, 1371 (J.P.M.L. 2013)

---

[19] These Defendants with headquarters in Texas are: Allied Orion Group LLC; Camden Property Trust; Campus Advantage, Inc.; Conti Capital; CWS Apartment Homes, LLC; Dayrise Residential, LLC; Highmark Residential, LLC; Kairoi Management, LLC; Knightvest Residential; Lincoln Property Company; Morgan Group, Inc.; Pinnacle Property Management Services, LLC; RPM Living LLC; and Trammel Crow Company, Inc.

("[R]elevant documents and witnesses may be found in the Northern District of California, inasmuch as several defendants have major facilities or lithium ion battery business in or near the district.").  In fact, as of the date of this motion, no federal judicial district encompasses the headquarters of more Defendants than does the Northern District of Texas.  Meanwhile, approximately 35 of the more than 60 Defendants named in the Actions have operations and/or own property in the Northern District of Texas.[20]  To the extent evidence concerning specific lease transactions involving Plaintiffs is outside the Northern District of Texas, that evidence would be dispersed throughout multiple federal judicial districts across the country.  Thus, the Northern District of Texas is the forum in which the largest volume of relevant evidence is located.

**B. The Northern District of Texas Provides a Geographically Central and Convenient Forum for this Nationwide Litigation.**

The Panel also considers whether a district "is a geographically convenient location."  *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 277 F. Supp. 2d 1373, 1374 (J.P.M.L. 2003).  The geographically central location of the Northern District of Texas is ideal given the broad geographic dispersion of the parties, putative class members, and filed cases. Plaintiffs not only reside in cities across the United States, ranging from Dallas and San Diego to Charlotte and Boston, but also purport to represent nationwide classes in cases that have been

---

[20] The Defendants that own and/or manage multifamily residential real estate units in in the Northern District of Texas are: Allied Orion Group, LLC; AvalonBay Communities, Inc.; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Camden Property Trust; Campus Advantage, Inc.; Cardinal Group Holdings, LLC; CH Real Estate Services; Cortland Partners, LLC; Cushman & Wakefield, Inc.; CWS Apartment Homes, LLC; D.P. Preiss Company, Inc.; Dayrise Residential, LLC; Equity Residential; FPI Management, Inc.; Greystar Real Estate Partners, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lincoln Property Company; Mid-America Apartment Communities, Inc.; Mission Rock Residential, LLC; Morgan Group, Inc.; RPM Living, LLC; Sares Regis Group Operating, Inc.; Simpson Property Group, LLLP; Trammel Crow Company, Inc.; UDR, Inc.; Windsor Property Management Company; WinnCompanies LLC; ZRS Management LLC; Monarch Investment and Management Group; and NALS Apartment Homes.

filed in Texas, New Mexico, Colorado, Tennessee, and on both coasts.  While no district to date encompasses the headquarters of more defendants than the Northern District of Texas, the rest of the Defendants are headquartered in over 20 different federal judicial districts from coast to coast.  As the Panel has recognized in another putative antitrust class action, the Northern District of Texas in particular "provides a geographically central forum for . . . nationwide litigation."  *In re On-Line Travel Co. (OTC)/Hotel Booking Antitrust Litig.*, 908 F. Supp. 2d 1369, 1370 (J.P.M.L. 2012) (centralizing cases in the Northern District of Texas).

The Northern District of Texas and its Dallas Division in particular also affords out-of-town parties and counsel easy and convenient access to 2 major airports, Dallas/Fort Worth International Airport ("DFW") and Dallas Love Field Airport ("Love Field"), each located within 20 miles of the Northern District of Texas courthouse in Dallas.  In 2021, DFW was selected as the world's most connected airport.[21]  It offers 239 nonstop destinations, more than any other airport in the country.[22]  Love Field, less than 7 miles from Downtown Dallas, complements DFW with flights to over 145 destinations and over 600 flight operations daily.[23]  There is also a large selection of hotels and other accommodations in Dallas, with more than 80,000 hotel rooms in the area.

**C.  The Relative Caseloads Favor the Northern District of Texas.**

The Northern District of Texas also has the resources and judicial experience to properly conduct these complex proceedings.  With 12 active Article III judges and a shorter time to trial in civil cases than many other jurisdictions, the Northern District of Texas is well positioned to

---

[21] *See* Port Authority of NY & NJ, "2021 Airport Traffic Report," 32 (April 2022).
[22] Kyle Arnold, *DFW Airport Tops the Nation in a Category Travelers Can Appreciate*, THE DALLAS MORNING NEWS (Sept. 12, 2022).
[23] *See* Dallas Love Field Airport, https://www.dallas-lovefield.com/airport-info/about-us (last accessed: Jan. 3, 2023).

effectively and efficiently handle this litigation.[24]  Specifically, the median time to trial in civil

cases in the Northern District of Texas is 25.1 months, whereas the national average is 32.6

months.[25]

Additionally, the Northern District of Texas presently has just 2 pending MDLs.  *See*

*generally In re Stanford Entities Secs. Litig.*, MDL 2099; *In Re Depuy Orthopedics Inc. Pinnacle*

*Hip Implant Prods. Liab. Litig.*, MDL 2244.  Therefore, it has capacity to manage another MDL

of this size and scope.  *See, e.g., In re Corn Derivative Antitrust Litig*. 486 F. Supp. 929, 932

(J.P.M.L. 1980) (selecting transferee district because it had had relatively few multidistrict

litigations); *In re Packaged Ice Antitrust Litig.*, 560 F. Supp. 2d 1359, 1361 (J.P.M.L. 2008)

(selecting a district with "favorable caseload conditions").

### D.  The Absence of a Filed Case in the Northern District of Texas Does Not Disfavor Centralization in that District.

The Panel has recognized that the location of the currently filed cases is not a critical

factor in the Panel's decision to transfer and centralize litigation where, as here, named Plaintiffs

are Texas residents and potential class members "will reside in every corner of the country."  *See*

*In re BP p.l.c. Secs. Litig.*, 734 F. Supp. 2d 1376, 1377-79 (J.P.M.L. 2010); *see also In re*

*Darvocet, Darvon & Propoxyphene Prods.*, 780 F. Supp. 2d at 1381 (J.P.M.L. 2011) (concluding

that "the location of the currently filed cases is not a particularly significant factor in [the

Panel's] decision" because "potential plaintiffs and putative class members will reside in every

corner of the country and defendants are located in several states").  Indeed, both Plaintiffs and

Defendants reside and/or operate in various parts of the country.  Six named Plaintiffs are Texas

---

[24] *United States District Courts — National Judicial Caseload Profile*,
https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf (last  visisted
Jan. 3, 2023)
[25] *Id.*

17

residents who rent and/or have rented residential units in Texas, and Plaintiff Boelens previously resided in Texas and rented a residential unit in Texas. *See Bohn*, 2:22-cv-01743, Compl. ¶¶ 17-18 (Plaintiff Bohn allegedly rents in Dallas, Texas, which falls within the Northern District of Texas); *Vincin*, Compl. ¶¶ 20-23 (Plaintiff Boelens allegedly rented in Euless, Texas, which falls within the Northern District of Texas); *Carter*, Compl. ¶ 20.  And there are already 2 Actions pending in the Western District of Texas, which shows that the State of Texas is the preferred forum of at least some Plaintiffs. *See Vincin*, Compl.; *Carter*, Compl.  Accordingly, the absence of a filed case in the Northern District of Texas does not disfavor its selection as transferee district.[26]

### E.  The Panel Should Not Afford Deference to Plaintiffs' Choice of Forum.

Including subsequent dismissals and re-filed cases, Plaintiffs have filed 31 Actions in 12 different forums.[27]  Leading up to and immediately following Defendants' initial Section 1407 Motion, certain Plaintiffs voluntarily dismissed their cases and re-filed in the Western District of Washington, as summarized below.  But despite certain Plaintiffs' best efforts to coordinate the dismissal and re-filing of certain Actions in a single forum, which led to the Panel's initial ruling,

---

[26] *See In re Sw. Life Ins. Co. Sales Practices Litig.*, 268 F. Supp. 2d 1377, 1378 (J.P.M.L. 2003) (explaining that "[e]ven though no constituent action is currently pending in the Northern District of Texas, we are persuaded that this district is an appropriate transferee forum for this litigation" because "relevant documents and witnesses are likely located there . . . and several plaintiffs reside in Texas"); *see also In re Silicone Gel Breast Implant Prods. Liab. Litig.*, 793 F. Supp. 1098, 1101 (J.P.M.L. 1992) (transferring 78 actions to a district where none of them were pending because, among other things, "no single location stands out as the geographic focal point for this *nationwide* docket" and the Panel sought "a transferee judge with the ability and temperament to steer this complex litigation") (emphasis added).

[27] Plaintiffs originally filed actions in the Western District of Texas, the Southern District of California, the Central District of California, the Northern District of California, the Western District of Washington, the District of Colorado, the District of Massachusetts, the Southern District of New York, the District of New Mexico, the District of Columbia, the Northern District of Illinois, and the Middle District of Tennessee.  As noted, because certain Actions have been voluntarily dismissed as of the date of this Motion, the 22 Actions are currently pending in 7 districts:  the Western District of Texas, the District of Colorado, the District of Massachusetts, the District of New Mexico, the District of Columbia, the Middle District of Tennessee, and the Western District of Washington.

new Actions have again spread the litigation across various districts.

On December 2, 2022, certain Plaintiffs simultaneously and voluntarily dismissed 2 Actions—1 pending in the Southern District of California (*Bason*, 3:22-cv-01611, Notice of Voluntary Dismissal) and 1 pending in the Central District of California (*Morgan*, 8:22-cv-02136, Notice of Voluntary Dismissal)—and joined to file a complaint in the Western District of Washington that alleged the same claims and putative class on behalf of the same Plaintiffs as their previously-filed *Bason* and *Morgan* Actions.  *See Morgan*, 2:22-cv-01712, Compl.[28] Moreover, on December 6, Plaintiff Armas, a North Carolina resident, voluntarily dismissed her Action in the Northern District of California and joined Plaintiff Blum, a Tennessee resident, to file a virtually identical Action also in the Western District of Washington.  *See Armas*, 4:22-cv-07543, Notice of Voluntary Dismissal*; see also Armas*, 2:22-cv-01726, Compl.  On the same day, Plaintiff Johnson, a California resident, voluntarily dismissed his Action in the Central District of California, and proceeded to refile a virtually identical Action on December 7, also in the Western District of Washington.  *See Johnson,* 8:22-cv-02113, Notice of Voluntary Dismissal; *see also Johnson*, 2:22-cv-01734, Compl.  Plaintiffs in 3 additional Actions followed and, by the end of the week, Plaintiffs voluntarily dismissed the 3 cases outside of the Western

---

[28] The *Bason* Action was the first-filed Action, and was pending before Judge William Q. Hayes, a seasoned jurist who has significant complex litigation experience, having presided over approximately 262 class actions.  Judge Hayes would have been well-positioned to manage this multidistrict litigation. Further, the first *Morgan* Action that was filed in the Central District of California was assigned to another experienced district court judge who has presided over approximately 901 class actions, including antitrust matters—at least one of which alleged a similar conspiracy theory to that alleged here.  *See, e.g.*, *G.U.E. Tech, LLC v. Panasonic Avionics Corp.*, No. 15-cv-00789, 2016 WL 6138422 (C.D. Cal. Feb. 4, 2016).  There is currently pending before Judge Lasnik a motion to transfer the new *Morgan* case back to Judge Hayes in the Southern District of California on the ground that Plaintiffs and their counsel in the related *Morgan* and *Bason* cases have engaged in improper forum shopping (*see Morgan*, No. 2:22-cv-01712, Dkt. No. 20), which would add the Southern District of California as another district with a pending related case.  Both Plaintiffs in the original *Morgan* Action reside in California, and 3 of the 5 original *Bason* Plaintiffs reside in California, whereas only 2 reside in Washington.

District of Washington.  *Silverman*, 1:22-cv-09850 (S.D.N.Y.), Notice of Voluntary Dismissal;

*Lazarte*, 4:22-cv-06904 (N.D. Cal.), Notice of Voluntary Dismissal; *Crook,* 3:22-cv-01907 (S.D.

Cal.), Notice of Voluntary Dismissal.  This maneuvering further illustrates that Plaintiffs' claims

have no particular connection to any specific forum.

    This litigation is multidistrict.  The Panel deemed Defendants' initial motion to centralize

and transfer as moot because this litigation had lost its "multidistrict character."  *See* MDL 3066,

*In re RealPage Apartment Rental Software Antitrust Litig.*, Dkt. No. 7.  The recent filings in

Districts in Texas, Colorado, Massachusetts, Washington D.C., New Mexico and Tennessee have

made the litigation multidistrict again.  Accordingly, the Panel should not afford deference to a

subset of Plaintiffs' choice of a transferee district in light of their maneuvering.  *See, e.g.*,

*Alvarado v. Bank of America*, No. Civ. S-08-2862, 2009 WL 720875 at *2-4 (E.D. Cal. Mar. 17,

2009) (granting motion to transfer complaint back to Northern District of California after

Plaintiff voluntarily dismissed and filed a virtually identical complaint in the Eastern District of

California).

    The facts and circumstances related to these Actions support transferring and centralizing

in the Northern District of Texas as the appropriate forum.

## **CONCLUSION**

    Defendants respectfully request that the Panel transfer the Actions for consolidated

pretrial proceedings to the Northern District of Texas.

Dated:  January 4, 2023

Respectfully submitted,

/s/ *Jay Srinivasan*
Jay Srinivasan
jsrinivasan@gibsondunn.com
Daniel G. Swanson
dswanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7430

Stephen Weissman
sweissman@gibsondunn.com
Michael J. Perry
mjperry@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 955-8678

Ben A. Sherwood
bsherwood@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-2671

*Counsel for Defendant RealPage, Inc.*

/s/ *Michael M. Maddigan*
Michael M. Maddigan
michael.maddigan@hoganlovells.com
Vassi K. Iliadis
vassi.iliadis@hoganlovells.com
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4727

William L. Monts, III
william.monts@hoganlovells.com
Benjamin F. Holt
benjamin.holt@hoganlovells.com
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-6440

*Counsel for Defendant Greystar Real Estate Partners, LLC*

/s/ *Belinda S Lee*
Belinda S Lee
belinda.lee@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-8851

E. Marcellus Williamson
marc.williamson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington DC, 20004
Telephone: (202) 637-2200

*Counsel for Defendant AvalonBay Communities, Inc.*

21

/s/ *James Kress*
James Kress
james.kress@bakerbotts.com
Paul Cuomo
paul.cuomo@bakerbotts.com
BAKER BOTTS LLP
700 K. Street, NW
Washington, DC 20001
Telephone: (202) 639-7884

Danny David
danny.david@bakerbotts.com
BAKER BOTTS LLP
910 Louisiana Street
Houston, TX 77002
Telephone: (713) 229-4055

*Counsel for Defendant Avenue5 Residential, LLC*

/s/ *Gregory J. Casas*
Gregory J. Casas
casasg@gtlaw.com
GREENBERG TRAURIG, LLP
300 West 6th Street, Suite 2050
Austin, TX 78701
Telephone: (512) 320-7200

Robert J. Herrington
herringtonr@gtlaw.com
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700

Becky L. Caruso
carusob@gtlaw.com
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Telephone: (609) 442-1196

*Counsel for Defendant Lincoln Property Co.*

/s/ *Michael W. Scarborough*
Michael W. Scarborough
mscarborough@sheppardmullin.com
Dylan I. Ballard
dballard@sheppardmullin.com
SHEPPARD MULLIN RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 774-2963

Arman Oruc
aoruc@goodwinlaw.com
GOODWIN PROCTOR LLP
1900 N Street, NW
Washington, DC 20036
(202) 346 4440

*Counsel for Defendants Essex Property Trust, Inc. and Essex Management Corporation*

/s/ *J. Dino Vasquez*
J. Dino Vasquez
dvasquez@karrtuttle.com
KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, WA 98104-7055
Telephone: 206-224-8023

*Counsel for Defendant Security Properties Inc.*

/s/ *Britt M. Miller*
Britt M. Miller
bmiller@mayerbrown.com
Daniel T. Fenske
dfenske@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 6006
Telephone: (312) 701-8663

*Counsel for Defendant Mid-America Apartment Communities, Inc.*

/s/ *Charles H. Samel*
Charles H. Samel
charles.samel@stoel.com
Edward C. Duckers
ed.duckers@stoel.com
STOEL RIVES LLP
1 Montgomery Street, Suite 3230
San Francisco, CA  94104
Telephone: (415) 617-8900

George A. Guthrie
gguthrie@wilkefleury.com
WILKE FLEURY LLP
621 Capitol Mall, Suite 900
Sacramento, CA  95814
Telephone: (916) 441-2430

*Counsel for Defendant FPI Management, Inc.*


/s/ *Timothy R. Beyer*
Timothy R. Beyer
tim.beyer@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203
Telephone: (303) 866-0481

Sarah Hartley
sarah.hartley@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
1155 F Street, N.W.
Washington, DC 20004
Telephone: (303) 866-0363

*Counsel for Defendant Cardinal Group
Holdings LLC*

/s/ *Jeremy J. Calsyn*
Jeremy J. Calsyn
jcalsyn@cgsh.com
Leah Brannon
lbrannon@cgsh.com
Kenneth Reinker
kreinker@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1522

Joseph M. Kay
jkay@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2745

*Counsel for Defendants Cushman &
Wakefield, Inc. and Pinnacle Property
Management Services, LLC*


/s/ *Ian Simmons*
Ian Simmons
isimmons@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 29996
Telephone: (202) 383-5106

Stephen McIntyre
smcintyre@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-8382

*Counsel for Defendant BH Management
Services, LLC*

23

/s/ *Judith A. Zahid*
Judith A. Zahid
jzahid@zellelaw.com
Heather T. Rankie
hrankie@zellelaw.com
ZELLE LLP
555 12th Street, Suite 1230
Oakland, CA 94607
Telephone: (415) 693-0700

*Counsel for Defendant Prometheus Real*
*Estate Group, Inc.*


/s/ *Benjamin R. Nagin*
Benjamin Nagin
bnagin@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300

*Counsel for Defendant ConAm Management*
*Corporation*


/s/ *Marisa Secco Giles*
Marisa Secco Giles
mgiles@velaw.com
VINSON & ELKINS LLP
200 West 6th Street, Suite 2500
Austin, TX 78701
Telephone: (512) 542-8781

Jason M. Powers
jpowers@velaw.com
VINSON & ELKINS LLP
845 Texas Avenue, Suite 4700
Houston, TX 77002
Telephone: (713) 758-2522

*Counsel for Defendant Campus Advantage,*
*Inc.*

/s/ *Amy B. Manning*
Amy B. Manning
amanning@mcguirewoods.com
Angelo M. Russo
arusso@mcguirewoods.com
MCGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
Telephone: (312) 750-8904

*Counsel for Defendant D.P. Preiss Company,*
*Inc.*


/s/ *Lynn H. Murray*
Lynn H. Murray
lhmurray@shb.com
SHOOK, HARDY & BACON L.L.P.
111 S. Wacker Dr., Suite 4700
Chicago, IL 60606
Telephone: (312) 704-7766

Ryan Sandrock
rsandrock@shb.com
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 544-1944

Laurie A. Novion
lnovion@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 559-2352

*Counsel for Defendant Camden Property*
*Trust*

/s/ *David T. Moran*
David T. Moran
dmoran@jw.com
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: (214) 953-6051

Joseph A. Fischer, III
tfischer@jw.com
Joel R. Glover
jglover@jw.com
JACKSON WALKER LLP
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4226

*Counsel for Defendant Morgan Group, Inc.*

/s/ *Ferdose Al-Taie*
Ferdose Al-Taie
ferdose.al-taie@akerman.com
Ryan Krone
ryan.krone@akerman.com
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone: (214) 720-4308

*Counsel for Defendant ZRS Management, LLC*

/s/ *David A. Walton*
David A. Walton
dwalton@bellnunnally.com
Troy Lee (T.J.) Hales
thales@bellnunnally.com
BELL NUNNALLY & MARTIN, LLP
2323 Ross Avenue, Suite 1900
Dallas, TX 75201
Telephone: (214) 740-1445

*Counsel for Defendant RPM Living, LLC*

/s/ *Craig Seebald*
Craig P. Seebald
cseebald@velaw.com
Stephen M. Medlock
smedlock@velaw.com
Molly E. McDonald
mmcdonald@velaw.com
Alex Rant
arant@velaw.com
Rami Abdallah E. Rashmawi
rrashmawi@velaw.com
VINSON & ELKINS LLP
2200 Pennsylvania Ave., N.W.
Suite 500 West
Washington, D.C. 20037
Telephone: (202) 639-6500

Christopher W. James
cjames@velaw.com
Madison Lo
mlo@velaw.com
VINSON & ELKINS LLP
555 Mission Street
Suite 2000
San Francisco, CA 94105
Telephone: (415) 979-6900

*Counsel for Defendant Windsor Property Management Company*

/s/ *Carl W. Hittinger*
Carl W. Hittinger
chittinger@bakerlaw.com
BAKER & HOSTETLER LLP
1735 Market Street, Suite 3300
Philadelphia, PA 19103
Telephone: (215) 564-2898

*Counsel for Defendant Equity Residential*

/s/ *Michael D. Bonanno*

Michael D. Bonanno
mikebonanno@quinnemanuel.com
Christopher Kercher
christopherkercher@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN,
LLP
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8225

*Counsel for Defendant Highmark Residential,*
*LLC*


/s/ *Benjamin I. VandenBerghe*

Benjamin I. VandenBerghe
biv@montgomerypurdue.com
Kaya R. Lurie
klurie@montgomerypurdue.com
MONTGOMERY PURDUE PLLC
701 Fifth Avenue, Suite 5500
Seattle, WA 98104
Telephone: (206) 682-7090

*Counsel for Defendant Thrive Communities*
*Management, LLC*


/s/ *James D. Bragdon*

James D. Bragdon
jbragdon@gejlaw.com
Sam Cowin
scowin@gejlaw.com
GALLAGHER EVELIUS & JONES LLP
218 North Charles St., Ste. 400
Baltimore, MD 21201
Telephone: (410) 347-1369

*Counsel for Bozzuto Management Company*

/s/ *David D. Cross*

David D. Cross
dcross@mofo.com
Jeffrey A. Jaeckel
jjaeckel@mofo.com
Robert W. Manoso
rmanoso@mofo.com
Sonja Swanbeck
sswanbeck@mofo.com
MORRISON & FOERSTER LLP
2100 L St, NW, Suite 900
Washington, DC 20037
Telephone: (202) 887-1500

*Counsel for Defendant UDR, Inc.*


/s/ *Todd R. Seelman*

Todd R. Seelman
todd.seelman@lewisbrisbois.com
Thomas L. Dyer
thomas.dyer@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
1700 Lincoln Street, Suite 4000
Denver, CO 80203
Telephone: (720) 292-2002

Rachel Tallon Reynolds
rachel.reynolds@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
1111 Third Avenue, Suite 2700
Seattle, WA 98101
Telephone: (206) 436-2020

*Counsel for Defendants Cortland Partners,*
*LLC and Mission Rock Residential, LLC*

/s/ *Edwin Buffmire*
Edwin Buffmire
ebuffmire@jw.com
Michael W. Moran
mmoran@jw.com
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: (214) 953-5939

Kevin Fulton
kevin@fultonlg.com
FULTON LAW GROUP, PLLC
7676 Hillmont Street, Suite 191
Houston, TX 77040
Telephone: (713) 589-6964

*Counsel for Defendant Allied Orion Group,*
*LLC*

/s/ *Elizabeth A.N. Haas*
Elizabeth A. N. Haas
ehaas@foley.com
Ian Hampton
ihampton@foley.com
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
Telephone: (414) 271-2400

Diane R. Hazel
dhazel@foley.com
FOLEY & LARDNER LLP
1400 16th Street, Suite 200
Denver, CO 80202
Telephone: (720) 437-2034

*Counsel for Defendant Sherman Associates,*
*Inc.*

/s/ *Fred B. Burnside*
Fred B. Burnside
fredburnside@dwt.com
MaryAnn T. Almeida
maryannalmeida@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: (206) 622-3150

Yonaton Rosenzweig
yonirosenzweig@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 S Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone: (213) 655-9642

*Counsel for Defendants The Michaels*
*Organization, LLC and Interstate Realty*
*Management Company*

/s/ *Michael F. Murray*
Michael F. Murray
michaelmurray@paulhastings.com
PAUL HASTINGS LLP
2050 M Street, NW
Washington, DC 20036
Telephone: (202) 551-1730

Noah Pinegar
noahpinegar@paulhastings.com
PAUL HASTINGS LLP
200 Park Ave
New York, NY 10166
Telephone: (212) 318-6057

*Counsel for Defendant CA Ventures Global*
*Services, LLC*