**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| |
|---|
| IN RE: REALPAGE, INC. RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) |

MDL No.  3071

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

    I.     THE PANEL SHOULD TRANSFER THESE ACTIONS TO THE
          NORTHERN DISTRICT OF TEXAS .......................................................................... 2

    II.    THE WESTERN DISTRICT OF WASHINGTON IS NOT AN APPROPRIATE
          TRANSFEREE DISTRICT. ......................................................................................... 5

    III.   IF THE PANEL DOES NOT TRANSFER THESE ACTIONS TO THE
          NORTHERN DISTRICT OF TEXAS, THEN THE DISTRICT OF
          COLORADO WOULD BE THE NEXT MOST APPROPRIATE FORUM. ........... 15

CONCLUSION ......................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

*CASES*

*Alvarado v. Bank of Am.*,
    No. Civ. S-08-2862 LKK/DAD, 2009 WL 720875 (E.D. Cal. Mar. 17, 2009) ........................ 8

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
    598 F. Supp. 2d 1366 (J.P.M.L. 2009) ................................................................................ 3

*In re Aimster Copyright Litig.*,
    177 F. Supp. 2d 1380 (J.P.M.L. 2001) ................................................................................ 9

*In re Blue Buffalo Co., Ltd., Mktg. & Sales Pracs. Litig.*,
    53 F. Supp. 3d 1385 (J.P.M.L. 2014) ................................................................................. 9

*In re BP P.L.C. Secs. Litig.*,
    734 F. Supp. 2d 1376 (J.P.M.L. 2010) ................................................................................ 4

*In re Broiler Chicken Grower Antitrust Litig. (No. II)*,
    509 F. Supp. 3d 1359 (J.P.M.L. 2020) ............................................................................. 12

*In re Cotton Yarn Antitrust Litig.*,
    336 F. Supp. 2d 1383 (J.P.M.L. 2004) ................................................................................ 2

*In re Credit Default Swaps Antitrust Litig.*,
    978 F. Supp. 2d 1374 (J.P.M.L. 2013) ......................................................................... 4, 16

*In re Epipen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
    268 F. Supp. 3d 1356 (J.P.M.L. 2017) ................................................................................ 7

*In re H & R Block IRS Form 8863 Litig.*,
    977 F.Supp.2d 1364 (J.P.M.L. 2014) ................................................................................. 9

*In re IntraMTA Switched Access Charges Litig.*,
    67 F.Supp.3d 1378 (J.P.M.L. 2014) ................................................................................... 9

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
    528 F. Supp. 2d 1372 (J.P.M.L. 2007) ................................................................................ 2

*In re LandAmerica 1031 Exch. Servs., Inc., Internal Revenue Serv. § 1031 Tax Deferred Exch.
    Litig.*,
    626 F. Supp. 2d 1345 (J.P.M.L. 2009) ............................................................................. 16

*In re Monsanto Co. Genetically-Engineered Wheat Litig.*,
    978 F. Supp. 2d 1373 (J.P.M.L. 2013) ......................................................................... 2, 16

*In re Oxycontin Prods. Liab. Litig. (No. II)*,
  395 F. Supp. 2d 1358 (J.P.M.L. 2005)......................................................... 8

*In re Simply Orange Orange Juice Mktg. & Sales Pracs. Litig.*,
  867 F.Supp.2d 1344, 1345 (J.P.M.L. 2012).................................................. 9

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
  999 F. Supp. 2d 1383 (J.P.M.L. 2014)....................................................... 16

*In re Toys ''R'' Us-Delaware, Inc., Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
  581 F. Supp. 2d 1377 (J.P.M.L. 2008)....................................................... 12

*In re Transit Co. Tire Antitrust Litig.*,
  350 F. Supp. 1165 (J.P.M.L. 1972).............................................................. 9

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
  290 F. Supp. 2d 1376 (J.P.M.L. 2003).......................................................... 5

## STATUTES

28 U.S.C. § 1407(a) ...................................................................................... 12

## RULES

Local R. W.D. Wash. 7(d) ............................................................................. 11

## INTRODUCTION

All parties support the transfer and centralization of these Actions in a single district for consolidated pretrial proceedings. *See generally* Dkt. Nos. 151, 155, 156. The only disputed issue is where these 27 related Actions should go.[1] *Id.*

The "Regional Plaintiffs," who have filed Actions in eight jurisdictions, seek transfer to the District of Colorado. *See* Dkt. No. 156. The remaining Plaintiffs, including the *Navarro* student housing Plaintiff (collectively, the "Washington Plaintiffs"), after months of jurisdictional maneuvering, propose the Western District of Washington. *See* Dkt. Nos. 151, 155.

Neither district that Plaintiffs propose is as closely connected to this litigation as the Northern District of Texas. Neither has as many witnesses as the Northern District of Texas. Neither is the site of as much evidence as the Northern District of Texas. Neither is the home district of RealPage, the central Defendant in every Action, and in neither do as many Defendants have a significant presence as the Northern District of Texas. The Northern District of Texas is the most suitable and sensible location for this litigation because of the location of relevant evidence and witnesses, the connection of a number of Defendants to the district, the geographic convenience for parties, and the district's relevant caseload and capabilities.

---

[1] Since Defendants filed their § 1407 Motion on January 4, 2023, the JPML noticed four potentially related cases filed in Florida, Colorado, and Arizona. *See* Dkt. Nos. 7-9; *Parker v. RealPage, Inc.*, No. 1:23-cv-20160 (S.D. Fla. Jan. 13, 2023), Dkt. No. 1; *Corradino v. RealPage, Inc.*, No. 1:23-cv-20165 (S.D. Fla. Jan. 19, 2023), Dkt. No. 1; *Enders v. RealPage, Inc.*, No. 1:23-cv-00055 (D. Colo. Jan. 19, 2023), Dkt. No. 1; *Bertlshofer v. RealPage, Inc.*, No. 2:23-cv-00018 (D. Ariz. Jan. 19, 2023), Dkt. No. 1. The court in the Southern District of Florida consolidated three related cases *sua sponte* under *Parker*. *See Parker,* Dkt. Nos. 5, 9. Defendant Greystar Real Estate Partners, LLC also filed notices of related actions for two additional cases in the Western District of Washington and one in the Eastern District of California. *See* Dkt. Nos. 12, 142; *Crook v. RealPage, Inc.*, No. 2:23-cv-00054 (W.D. Wash. Jan. 10, 2023), Dkt. No. 1; *Hardie v. RealPage, Inc.*, No. 2:23-cv-00059 (W.D. Wash. Jan. 10, 2023), Dkt. No. 1; *Schmidig v. RealPage, Inc.*, No. 1:23-cv-00108 (E.D. Cal. Jan. 23, 2023), Dkt. No. 1. Accordingly, there are currently 27 Actions pending in nine districts.

Defendants respectfully ask the Panel to transfer these Actions to the Northern District of Texas for consolidated pretrial proceedings.  While Defendants believe that the superiority of the Northern District of Texas is substantial in comparison to any other district, if the Panel does not transfer these cases to Texas, then Colorado is the next best central alternative.

## I.     THE PANEL SHOULD TRANSFER THESE ACTIONS TO THE NORTHERN DISTRICT OF TEXAS.

The Northern District of Texas—where RealPage is headquartered—is the most appropriate transferee district for these Actions.  Indeed, Plaintiffs allege that RealPage "facilitated" the entire conspiracy, leaving no dispute that much of the evidence is likely to be found there and that many witnesses are likely to be located there.  *See* Mot., Dkt. No. 1-1 at 17-19;[2] *see also In re Cotton Yarn Antitrust Litig.*, 336 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004) (centralizing cases challenging an alleged price-fixing conspiracy in a district where "documents and witnesses can likely be found"); *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, 528 F. Supp. 2d 1372, 1373 (J.P.M.L. 2007) (doing the same "where discovery may be found").

Plaintiffs' attempt to dismiss this critical factor is half-hearted at best, consisting of a summary assertion that "relevant evidence will be electronic."  Dkt. No. 155 at 18.  But even when electronic evidence is at issue, the physical location of evidence remains relevant to the Panel's decision.  *See, e.g.*, *In re Monsanto Co. Genetically-Engineered Wheat Litig.*, 978 F. Supp. 2d 1373, 1373 (J.P.M.L. 2013) (transferring five cases pending in four districts to a district with one pending case "where the majority of the common evidence is likely to be located, including the witnesses and documents . . .").  Moreover, Plaintiffs' arguments about documents fail to address the fact that key ***witnesses*** are located in Texas.  *In re Aftermarket Auto. Lighting Prods. Antitrust*

---

[2] Page numbers in citations to public docket entries cited herein refer to the pagination in the blue running header generated by Court's CM/ECF filing system.

*Litig.*, 598 F. Supp. 2d 1366, 1368 (J.P.M.L. 2009) ("[S]everal defendants are headquartered within the Central District of California and accordingly pertinent documents ***and witnesses*** are likely located there." (emphasis added)).   Indeed, as Defendants' motion explains, no district encompasses the headquarters of more Defendants—and therefore more foreseeable corporate witnesses—than the Northern District of Texas.  *See* Dkt. No. 1-1 at 19.  The Northern District of Texas is also centrally located, as noted below, and is not in a corner of the country.  This improves coordination of hearings for parties and their counsel for travel, as well as coordination of time zones for any court calls.

The Washington Plaintiffs resist the Northern District of Texas because it would not serve as the "trial forum" for all Actions, supposedly unlike the Western District of Washington.  Dkt. No. 155 at 13; Dkt. No. 151 at 2.  But this argument is overbroad.  *Every case* that the Panel transfers for pretrial proceedings must return to its district of origin for trial, yet there is no requirement to assign cases to any one of the pending forums.  *See* 28 U.S.C. § 1407(a) ("Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated.").  In that sense, *every* transferee court receiving a case for trial must, for itself, "learn" the case.  That is the way the system works.  Thus, the Washington Plaintiffs' arguments about the Western District of Washington could be made about every court in which a case is pending, both here and in any other MDL proceeding.  That some cases would be tried in Seattle (or Colorado) does not support either of Plaintiffs' preferred transferee districts over the Northern District of Texas.

Further, the current absence of a pending case in the Northern District of Texas does not render the district inappropriate for centralization.  Dkt. No. 155 at 12 (citing cases).[3]  The Panel has recognized that the location of pending cases is not a critical factor in the decision to transfer and centralize litigation when, as here, at least seven named Plaintiffs are Texas residents and potential class members "will reside in every corner of the country," including the Northern District of Texas.  *See In re BP P.L.C. Secs. Litig.*, 734 F. Supp. 2d 1376, 1377-79 (J.P.M.L. 2010); *see also* Dkt. No. 1-1 at 20-21.[4]  Indeed, many of the Washington Plaintiffs' cases assert *nationwide* classes.  Connection to the litigation, not the number of pending cases, is the key factor in assessing whether a particular venue is an appropriate transferee forum.  *See In re Credit Default Swaps Antitrust Litig.*, 978 F. Supp. 2d 1374, 1375 (J.P.M.L. 2013) (transferring cases to a district with one pending action and one potential tag-along action over a district with two pending actions and three potential tag-along actions because "most defendants [were] based [in the transferee district]" and "several events giving rise to the litigation likely occurred there"); *Monsanto Co. Genetically-Engineered Wheat*, 978 F. Supp. 2d at 1373  (transferring to a district with only one action and two potential tag-along where there were five related actions in nearby districts and it was close to Defendants' headquarters, "where the majority of the common evidence is likely to be located, including the witnesses and documents").  But the Panel also has transferred to a district without pending actions or a strong connection to the litigation in light of judicial administration considerations.  *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 290 F. Supp. 2d 1376,

---

[3] The cases on which Plaintiffs rely are inapposite.  Dkt. No. 155 at 12 (citing cases).  None are antitrust cases in which the product of a single defendant is at the core of Plaintiffs' allegations, as here.

[4] To the extent this factor comes into play, two cases are pending in the adjacent Western District of Texas.  *See generally Vincin*, No. 1:22-cv-1329; *Carter*, No. 1:22-cv-01332.

1377-79 (J.P.M.L. 2003) (transferring to a nearby district with no pending actions and no connection to the cases or allegations due to potential recusal issues in California).

The facts and circumstances related to these Actions support transferring and centralizing in the Northern District of Texas.  Plaintiffs' arguments in opposition do not compel a different result but instead, underscore why Texas is the most suitable forum.

## II. THE WESTERN DISTRICT OF WASHINGTON IS NOT AN APPROPRIATE TRANSFEREE DISTRICT.

The Panel should not consolidate in the Western District of Washington, for five main reasons.

*First*, the Western District of Washington has a tenuous connection to the litigation.  The Washington Plaintiffs seek to highlight the number of Plaintiffs and Defendants with connections to Washington, but these numbers pale in comparison to ***most*** Plaintiffs and Defendants, who have connections to other parts of the country and even closer connections to Texas.  For example, only nine Plaintiffs reside in Washington, while 43 Plaintiffs reside and rent properties elsewhere, from Texas to Florida to Massachusetts to Colorado.  Similarly, only four Defendants are headquartered in the Western District of Washington.[5]  By contrast, at least 27 Defendants have ***no*** meaningful contacts with the state of Washington.[6]  They are not headquartered in Washington, do not manage

---

[5] The four Defendants headquartered in the Western District of Washington are Avenue5 Residential, LLC; B/T/ Washington, LLC d/b/a Blanton Turner; Security Properties Inc.; and Thrive Communities Management, LLC.

[6] Defendants with no meaningful contacts in the Western District of Washington include Allied Orion Group LLC; BH Management Services, LLC; CA Ventures Global Services, LLC; Camden Property Trust; Cardinal Group Holdings, LLC; CH (Carter-Haston) Real Estate Services; Cortland Partners, LLC; Cushman & Wakefield, Inc.; D.P. Preiss Company, Inc.; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Lyon Management Group, Inc.; Mid-America Apartment Communities, Inc.; Morgan Group, Inc.; Morgan Properties, LLC; New England Realty Associates Limited Partnership; Peabody Properties, Inc.; Rose Associates Inc.; RPM Living, LLC; Sherman Associates, Inc.; SHP Management Corp.; TF Cornerstone, Inc.; The Related Companies, Inc.; WinnCompanies LLC; WinnResidential Manager Corp.; and ZRS Management LLC.

properties there, and have no offices there.

To bolster the supposed connection between the Western District of Washington and this litigation, the Washington Plaintiffs cite the initial public reporting about the alleged anticompetitive conduct, which focused in part on housing in Seattle, Washington.  *See* Dkt. No. 151 at 7; Dkt. No. 155 at 13 (citing Heather Vogell, *Rent Going Up? One Company's Algorithm May Be Why*, ProPublica, Oct. 15, 2022).  The focus on that fact only exposes the weakness of the Washington Plaintiffs' position; the choices of reporters and editors on what matters to include in an article have no bearing on the matters pertinent to the issue before the Panel.  Not surprisingly, the Washington Plaintiffs do not explain why they do.

But even on its own merits, the argument fails.  An article that happened to highlight alleged effects in one Seattle neighborhood does not change the scope of the claims in this litigation, which includes claims asserted in the Western District of Washington cases on behalf of putative *nationwide* classes as well as claims asserted in other districts on behalf of citywide and statewide classes from Dallas to Boston to Denver.  Nor does one article signify that the Western District of Washington bears a special or greater connection to these Actions than the Northern District of Texas, where most of the evidence and witnesses are likely to be located.  To the extent that evidence concerning specific lease transactions may involve Plaintiffs in Seattle, similar evidence for far more Plaintiffs will be dispersed throughout multiple federal judicial districts.

**_Second_**, the Panel should not defer to the Washington Plaintiffs' venue preference because it appears to rest largely on expediency rather than on principle.  Eight cases now pending in the Western District of Washington were first filed elsewhere, including California and New York. *See* Dkt. No. 1-1 at 7; Dkt. No. 12-1; Dkt. No. 12-8.  Fewer than 10 Washington Plaintiffs rent

units in the Seattle area.  Just because Plaintiff Navarro—the only student housing Plaintiff—prefers the Western District of Washington does not mean deference should be accorded to him over the many other Plaintiffs who rent multifamily units and filed Actions across the country. The student housing "tail" should not be wagging the multifamily "dog."[7]

Moreover, there are a dozen Actions pending outside the Western District of Washington, showing that Plaintiffs generally do not prefer the Western District of Washington.  When considering the interests of all parties—Plaintiffs and Defendants—Seattle is a poor option for these Actions.

Further, the Washington Plaintiffs have dismissed and re-filed actions in order to forum shop.  *See* Dkt. No. 1-1 at 12-14.  Fifteen Actions did not end up in the Western District of Washington because there are key relevant facts or evidence in Washington.  Rather, it was a result of coordination and a deliberate strategy to preemptively install Seattle-based counsel as lead counsel, which meant that these cases needed to be moved to Seattle instead of the preferred fora where they originally were filed.[8]  *Id.*; *see also* Dkt. No. 156 at 13 ("[M]ost of the cases filed in

---

[7] Plaintiff Navarro suggests his case should be kept separate from any transfer because it will "eventually have its own trial proceedings" focused on student housing as opposed to other multifamily housing.  *See* Dkt. No. 151 at 2-3.  That argument fails for three reasons.  First, whether student housing is a product market distinct from other multifamily housing is a fact question to be addressed at class certification and on the merits.  It is not pertinent to transfer and consolidation for pretrial proceedings.  Second, Navarro himself already conceded the point in the Western District of Washington when he sought consolidation of his student-housing case with all other multifamily cases then pending in the Western District.  *Navarro*, Dkt. No. 67.  Third, even assuming student housing is a distinct market, the claims in *Navarro* substantially overlap those of the multifamily housing plaintiffs.  Allegedly "[u]nique legal theories and factual allegations in a particular action . . . are not significant where all the actions arise from a common factual core." *In re Epipen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 268 F. Supp. 3d 1356, 1359 (J.P.M.L. 2017).

[8] Significantly, *seven* of the related Actions currently pending in the Western District of Washington, including the first-filed case, were originally filed in California (*Armas*, 22-cv-07543 (N.D. Cal.); *Bason*, 22-cv-1611 (S.D. Cal.); *Crook*, 22-cv-01907 (S.D. Cal.); *Godfrey*, 22-cv-2082

the Western District of Washington were first filed elsewhere but were voluntarily dismissed and re-filed in the Western District of Washington, in order to avoid Defendants' first motion for centralization."). The Panel need not defer to such maneuvering.[9] *See, e.g.*, *Alvarado v. Bank of Am.*, No. Civ. S-08-2862 LKK/DAD, 2009 WL 720875 at *2-4 (E.D. Cal. Mar. 17, 2009) (granting motion to transfer complaint back to Northern District of California after Plaintiff voluntarily dismissed and filed a virtually identical complaint in the Eastern District of California); *see also In re Oxycontin Prods. Liab. Litig. (No. II)*, 395 F. Supp. 2d 1358, 1359 (J.P.M.L. 2005) (the fact that plaintiffs in multiple actions in a single district are represented by "common counsel" reduces the significance of that factor). And, even if the Washington Plaintiffs attempted consolidation there in an effort to spare this Panel, as they now assert, those efforts did not achieve the full coordination they now claim to have sought.

**_Third_**, the Western District of Washington is not geographically central or convenient for the parties and witnesses. The vast majority of Plaintiffs rent multifamily residential and student housing units on both coasts and throughout the middle of the country, and the vast majority of

---

(C.D. Cal.); *Johnson*, 22-cv-02113 (C.D. Cal.); *Lazarte*, 22-cv-6904 (N.D. Cal.); *Morgan*, 22-cv-02136 (C.D. Cal.)). Indeed, the first set of Plaintiffs to file an action against RealPage and Lessor-Defendants filed their complaint in the Southern District of California in the *Bason* Action on October 18, 2022. Defendants noted in their opening Brief that the Southern District of California would have been "well-positioned to manage this multi-district litigation." Dkt. No. 1-1 at 19, n. 28. Plaintiffs have not disputed that point, and cannot, as between the *Bason* and *Crook* cases, at least *seven* individuals and their counsel had already decided that they were ready, willing, and able to litigate and represent a nationwide class in the Southern District of California, as they originally chose to file their lawsuits there, and *eighteen* named Plaintiffs originally chose to file their cases in California.

[9] The Washington Plaintiffs' assertion that Defendants' § 1407 motion was intended to "further the interests of particular counsel more than those of the statute" is flawed given the Washington Plaintiffs' dismissal-and-refile strategy with the claims of Plaintiffs in disparate locations. They also disparage those Plaintiffs in certain actions who oppose centralization in the Western District of Washington because they share the same "overlapping set of law firms." Dkt. No. 151 at 6, n.6. These arguments are baseless.

Defendants are headquartered or have operations elsewhere.  Parties and counsel located on the East Coast and throughout the Southeast would have to travel for *six or more hours* to reach Seattle.  Comparatively, the Northern District of Texas is centrally located, allowing for travel in under three or four hours from almost anywhere in the continental United States.[10]  *See, e.g.*, *In re IntraMTA Switched Access Charges Litig.*, 67 F.Supp.3d 1378, 1380 (J.P.M.L. 2014) (finding that the Northern District of Texas "is an appropriate transferee district for pretrial proceedings" for nationwide litigation pending on both coasts because "Dallas, Texas is an easily accessible and central location."); *In re H & R Block IRS Form 8863 Litig.*, 977 F.Supp.2d 1364, 1365 (J.P.M.L. 2014) (selecting "the Western District of Missouri as the transferee district for this litigation . . . [because it] is a geographically central forum for this nationwide litigation and has the resources available to efficiently adjudicate this multidistrict litigation"); *In re Orange Juice Mktg. & Sales Pracs. Litig.*, 867 F.Supp.2d 1344, 1345 (J.P.M.L. 2012) ("The Western District of Missouri is located in a geographically central location accessible to the parties ranging from California to Florida."); *In re Blue Buffalo Co., Ltd., Mktg. & Sales Pracs. Litig.*, 53 F. Supp. 3d 1385, 1386 (J.P.M.L. 2014) ("St. Louis also provides a geographically central location for this nationwide litigation."); *In re Aimster Copyright Litig.*, 177 F. Supp. 2d 1380, 1382 (J.P.M.L. 2001) (favoring transfer to Illinois as a "convenient, central forum" for nationwide litigation pending on both coasts); *In re Transit Co. Tire Antitrust Litig.,* 350 F. Supp. 1165, 1166 (J.P.M.L. 1972) (selecting Missouri as the transferee district as a "geographically central location" because "it is easily accessible from all parts of the country and provides a more convenient forum to all parties

---

[10] Parties traveling from cities like Los Angeles, Nashville, Phoenix, and Denver would only have to travel approximately three hours or less.  Parties traveling from Miami, Seattle, New York, and Washington D.C. would have to travel for approximately three to four hours.  And parties from Boston would have to travel just over four hours.

than either Los Angeles or Philadelphia").  To date, Plaintiffs' Actions collectively name over 60 Defendants, each with its already (or soon to be) retained separate counsel.  With such an unusually large number of Defendants, any geographic burden caused by a venue decision will have a magnified impact due to the sheer number of representatives tasked to appear in-person for any proceeding.  The Western District of Washington simply does not make logistical sense for these Actions.[11]

    **_Fourth_**, the relative caseload and docket conditions do not favor the Western District of Washington over the Northern District of Texas.  The Washington Plaintiffs cite statistics about the Western District of Washington indicating, for example, that the median time from filing to disposition in civil cases is less than one year, _see_ Dkt. No. 155 at 15, and that it completes trial months earlier than the Northern District of Texas.  Dkt. No. 151 at 7.[12]  But those differences are not as relevant to the real issue: the time needed to litigate multidistrict litigation of this magnitude. The Washington Plaintiffs also complain that the Northern District of Texas has "almost double" the number of criminal cases pending compared to the Western District of Washington, which they argue will place demands on the resources of the court.  Dkt. No. 151 at 7.  But the fact that the Northern District of Texas moves cases to trial more quickly than the Western District of Washington despite its higher criminal case load and greater current MDL caseload (two MDLs

---

[11] That certain Defendants have entered appearances in the Western District of Washington Actions does not signal a concession that Washington is "easily accessible," as Plaintiffs suggest. Dkt. No. 155 at 14.

[12] Moreover, as of the June 30, 2022 reporting period, the Northern District of Texas actually has a faster time from filing to trial for civil cases at 25.1 months compared to the Western District of Washington at 35.3 months.  _United States District Courts — National Judicial Caseload Profile_, at 34, 76, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf (last visited Feb. 2, 2023).  And, in any event, the time from filing to trial and the number of pending civil cases over three years in the Western District of Washington have been on the rise.  _Id._

versus none in the Western District of Washington) underscores that the Northern District of Texas is actually *more* efficient and better suited to handle these Actions than the Western District of Washington.

The Western District of Washington long has been strained by vacant judgeships, with three vacancies and only four active Article III judges.[13]  And the district remains backlogged today.[14]  Indeed, between 2017 and 2022, the vacancies in the Western District of Washington amounted to between 30 to 60 "vacant judgeship months" per each reporting year.[15]  In fact, perhaps the reason the Western District of Washington has no pending MDLs—which the Washington Plaintiffs try to favorably point to in order to support transfer of these Actions there— is that the district is short-staffed.[16]  On the other hand, with 12 active Article III judges and zero vacancies, the Northern District of Texas has a significantly greater caseload capacity.

*__Fifth__*, the Actions pending in the Western District of Washington are not further along than the Actions pending elsewhere.  For starters, the court has accepted the parties' stipulations, submitted in the Washington cases where Defendants were served, that indefinitely suspends

---

[13] *See*, *e.g.*, *id.* at 76; Greg Lamm, *New Wash. District Chief On His Plans For A Revitalized Bench*, LAW360 (Jan. 30, 2023, 3:54 PM EST) https://www.law360.com/competition/articles/1569283.  *See* Madison Alder, *Short-Benched U.S. Trial Courts Face Post-Pandemic Crisis*, BLOOMBERG LAW NEWS (Apr. 9, 2020) https://www.bloomberglaw.com/bloomberglawnews/us-law-week/XB9HB25C000000?bna_news_filter=us-law-week#jcite.

[14] Lamm, *New Wash. District Chief On His Plans For A Revitalized Bench*.  Moreover, in 2020, the Western District of Washington, senior judges accounted for approximately 67 percent of the caseload after working to try to reduce their schedules.  Former Chief Judge Ricardo Martinez noted that, following the pandemic, the Western District of Washington was "going to need to put a lot more pressure on our judges" to deal with the backlog.  *See* Alder, *Short-Benched U.S. Trial Courts Face Post-Pandemic Crisis*.

[15] *See United States District Courts — National Judicial Caseload Profile,* at 76.

[16] Lamm, *New Wash. District Chief On His Plans For A Revitalized Bench*, (noting that "U.S. District Judge David Estudillo said the court continues to face logistical challenges with only four of its seven seats filled" and that there were only two active judges at the height of the pandemic in the Western District of Washington).

Defendants' deadline to respond to the complaints while the Panel makes its determination.[17] *Alvarez*, Dkt. No. 21; *Armas*, Dkt. Nos. 54, 56, 69, 73; *Cherry*, Dkt. No. 31; *Morgan*, Dkt. No. 83, 94, 100, 110, 111, 138, 151; *Navarro*, Dkt. Nos. 21, 41.  Accordingly, by the agreement of the parties, none of the Washington cases are progressing ahead of the cases filed in the other districts. The Washington Plaintiffs' argument to the contrary rests on three events, none of which meaningfully "advanced" these cases: (1) a fully briefed motion pending in *Navarro* (the lone "student housing" case) to consolidate the Washington cases; (2) the entry of a schedule and appointment of interim class counsel in *Navarro*; and (3) Judge Lasnik's order in *Morgan* denying one Defendant's motion to transfer the case to California.

     ***Consolidation Motion.***  This Panel has generally treated litigation as "advanced" only where some action affecting the merits has occurred.  *See, e.g., In re Broiler Chicken Grower Antitrust Litig. (No. II)*, 509 F. Supp. 3d 1359, 1362 (J.P.M.L. 2020) (granting transfer to the district where an action advanced "beyond the pleadings stage"); *In re Toys "R" Us-Delaware, Inc., Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 581 F. Supp. 2d 1377, 1377-78 (J.P.M.L. 2008) (granting transfer to district where first-filed case had been pending for almost two years and discovery had already concluded).  Even an order granting consolidation—which is, at best, a localized case management device—does not satisfy that criterion.  The mere

---

[17] The Washington Plaintiffs also note that one defendant—B/T Washington, LLC—filed an answer in one of the Actions.  *See* Dkt. No. 155 at 9.  B/T Washington, LLC, a local family-owned property manager, which was unaware of being a defendant in any other Action, filed its answer before it knew that multiple Actions were pending in the Western District of Washington and other districts, or that the instant motion had been filed with the Panel.  B/T Washington, LLC agrees that all Actions should proceed on the same schedule, after the Panel rules on the instant motion. Nor have the Washington Plaintiffs and B/T Washington, LLC "beg[un] Rule 26(f) negotiations," as the Washington Plaintiffs contend.  *Id.*  Rather, no Rule 26(f) conference has been held.

pendency of a motion to consolidate, as here, falls short.[18]

Additionally, the Washington Plaintiffs' argument is classic bootstrapping.  By filing their premature consolidation motion, Plaintiff Navarro compelled Defendants to respond by a date certain (*see* Local R. W.D. Wash. 7(d)), which they did (arguing, among other things, that this motion was premature).  Washington Plaintiffs now seek to recast their unilateral activity on a case management issue as "advancement" of the lawsuits.  But the court has not even ruled on the *Navarro* consolidation motion, so there has been no advancement.  And even if the court were to grant the motion, these Actions will be no more "advanced" than the day they were filed or refiled.

Further, were the Panel to credit the Washington Plaintiffs' argument—that this type of unilateral, administrative activity could affect the ultimate transferee forum—it would incentivize parties in multidistrict cases to file non-substantive motions in their forum of choice to declare their case "advanced."   Such filings burden the local jurisdiction with needless procedural wrangling.  *See* Navarro Defendants' Response to Plaintiff's Motion to Consolidate Cases Pursuant to Rule 42(a), *Navarro*, Dkt. No. 76 at 3 (noting that "this [consolidation] motion is precisely the sort of duplicative motions practice that the JPML process was designed to avoid").  *See also* 28 U.S.C. § 1407(a) (expressing  Congress's desire for "the just and efficient conduct" of multidistrict cases).

***Appointment of Interim Class Counsel and Entry of a Schedule in Navarro***.  The *Navarro* court's appointment of interim class counsel and entry of a schedule (*Navarro*, Dkt. Nos. 78, 77) is ministerial at best.

The appointment of interim class counsel is the result of *Navarro*'s counsel touting itself

---

[18] The Washington Plaintiffs tout a consolidation motion pending in Washington while ignoring a consolidation *order* in the Florida cases, thus exposing the argument as makeweight.

as an expert on student-specific issues, and citing experience with NCAA lawsuits.  *Navarro*, Dkt. No. 64.  There is only one named Plaintiff in *Navarro*.  He requested that his own counsel be appointed as interim lead counsel for the putative class.  *Id.*  The *Navarro* Defendants took no position on the motion, and the only opposition came from counsel in another case who argued that the motion was premature.  *Navarro*, Dkt. No. 70.  Given the circumstances of *Navarro* (*i.e.*, one Plaintiff represented by one law firm) and the lack of any opposition from a party in the case, the granting of the motion was almost a foregone conclusion.  Again, had the motion awaited consolidation it may not have had the same result and, post consolidation, the decision may not stand.  Still, the case is in nearly the same posture as the day it was filed.

Likewise, the entry of a schedule in *Navarro*, setting trial for June 2024, is of no moment.  As noted above, the court has suspended all deadlines for responding to the complaints in the cases in which Defendants have been served.  *Navarro*, Dkt. Nos. 21, 41.  The scheduling order does not set any date certain for Defendants to respond to the complaint nor does it set any class certification deadlines.  Because *Navarro* is a putative nationwide class action, numerous class certification issues alone must be resolved, including whether any such nationwide market for student housing exists—which the Regional Plaintiffs dispute and which appears to be a facially dubious proposition—and, if so, whether Plaintiff Navarro can establish injury to such a sprawling class by reliance on common evidence.  Resolving those issues alone will require time and expert testimony, which are not built into the initial scheduling order.  As such, the *Navarro* scheduling order and the order appointing counsel "lead" of its own single case, like the other factors on which the Washington Plaintiffs rely, do not signify that the Washington cases have "advanced."

**Denial of Motion to Transfer**.  Plaintiffs' argument that Judge Lasnik's denial of Defendant Equity Residential's motion to transfer the *Morgan* case back to California "advances"

- 14 -

the Washington cases is even flimsier.  *See Morgan*, Dkt. No. 20.  Equity Residential's motion to transfer asserted that the *Morgan* Plaintiffs, who had originally filed their claims in California before voluntarily dismissing them and refiling in Seattle, were forum shopping.  *Id.*  Judge Lasnik concluded otherwise, but noted that in transferring cases to the Western District of Washington, Plaintiffs had engaged in a "uniform failure to notify courts of cases pending in other districts[.]"  Order Den. Mot. to Transfer, *Morgan*, Dkt. No. 128 at 2.  Again, the order was not substantive, did not address the merits, and leaves *Morgan* in the same posture as the day it was refiled.

For all of these reasons, the Panel should not transfer the Actions to the Western District of Washington.

### III.   IF THE PANEL DOES NOT TRANSFER THESE ACTIONS TO THE NORTHERN DISTRICT OF TEXAS, THEN THE DISTRICT OF COLORADO WOULD BE THE NEXT MOST APPROPRIATE FORUM.

If the Panel does not transfer the Actions to the Northern District of Texas, which is the most suitable forum for centralization, Defendants submit that the District of Colorado would be a more appropriate forum than the Western District of Washington.  As the Regional Plaintiffs note, like the Northern District of Texas, the District of Colorado is centrally located and can be reached in fewer than four hours via direct flight from nearly every major metropolitan area.  Dkt. 156 at 5-6.  Although not as many Defendants are headquartered or have operations in the District of Colorado as in the Northern District of Texas, more Defendants have operations in Colorado (30) than in Washington (23), and the same number of Defendants are headquartered in Colorado as in Washington (four).

As of today, three cases have been filed in the District of Colorado.  *Enders*, No. 1:23-cv-00055; *Mackie*, No. 1:23-cv-00011; *Weaver*, No. 1:22-cv-03224.  Though more cases were filed in the Western District of Washington, this difference is not material where one district is more

"convenient and accessible"[19] and is closer to the defendants' headquarters and operations,[20] as

the District of Colorado is here.  Finally, docket conditions in the District of Colorado are

comparable to, and in some respects more favorable than, the Western District of Washington:  it

has been the forum for MDLs in the past, though none is pending there now (Dkt. No. 156 at 7-8);

the District of Colorado has seven active Article III judges;[21] the median time from filing to

disposition and percentage of civil cases over three years old is similar;[22] and there are fewer

pending criminal cases in the District of Colorado.[23]

## CONCLUSION

Defendants respectfully request that the Panel transfer the Actions for consolidated pretrial

proceedings to the Northern District of Texas.

---

[19] *See In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 999 F. Supp. 2d 1383, 1384
(J.P.M.L. 2014) (transferring cases to district with three pending cases over district with eight
pending cases because the former "offers a forum that is both convenient and accessible for the
parties and witnesses, particularly for the numerous defendants that are based along the East
Coast"); *see also In re Monsanto Co. Genetically-Engineered Wheat Litig.*, 978 F. Supp. 2d 1373
(transferring cases to district with one pending case over district with two pending cases); *In re
Credit Default Swaps Antitrust Litig.*, 978 F. Supp. 2d at 1375  (transferring cases to district with
two pending cases over district with five pending cases).

[20] *In re LandAmerica 1031 Exch. Servs., Inc., Internal Revenue Serv. § 1031 Tax Deferred Exch.
Litig.*, 626 F. Supp. 2d 1345, 1346 (J.P.M.L. 2009) (transferring to district because of "the two
districts where actions are pending, [it] is nearer to [defendant]'s headquarters . . . where relevant
documents and witnesses are likely to be found").

[21] *See United States District Courts—National Judicial Caseload Profile*, at 79,
https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf.

[22] *See id.*

[23] *See Table D—U.S. District Courts–Criminal Federal Judicial Caseload Statistics* (Mar. 31,
2022), available at https://www.uscourts.gov/file/44160/download.

- 16 -

Dated:  February 7, 2023

Respectfully submitted,

/s/ *Jay P. Srinivasan*
Jay P. Srinivasan
jsrinivasan@gibsondunn.com
Daniel G. Swanson
dswanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7430

Stephen Weissman
sweissman@gibsondunn.com
Michael J. Perry
mjperry@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 955-8678

Ben A. Sherwood
bsherwood@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-2671

*Counsel for Defendant RealPage, Inc.*

/s/ *Michael M. Maddigan*
Michael M. Maddigan
michael.maddigan@hoganlovells.com
Vassi Iliadis
vassi.iliadis@hoganlovells.com
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4727

William L. Monts, III
william.monts@hoganlovells.com
Benjamin F. Holt
benjamin.holt@hoganlovells.com
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-6440

*Counsel for Defendant Greystar Real Estate Partners, LLC*

/s/ *Belinda S Lee*
Belinda S Lee
belinda.lee@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-8851

E. Marcellus Williamson
marc.williamson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington DC, 20004
Telephone: (202) 637-2200

*Counsel for Defendant AvalonBay Communities, Inc.*

/s/ *Danny David*
Danny David
danny.david@bakerbotts.com
BAKER BOTTS LLP
910 Louisiana Street
Houston, TX 77002
Telephone: (713) 229-4055

James Kress
james.kress@bakerbotts.com
Paul Cuomo
paul.cuomo@bakerbotts.com
BAKER BOTTS LLP
700 K. Street, NW
Washington, DC 20001
Telephone: (202) 639-7884

*Counsel for Defendant Avenue5 Residential,*
*LLC*

/s/ *Gregory J. Casas*
Gregory J. Casas
casasg@gtlaw.com
GREENBERG TRAURIG, LLP
300 West 6th Street, Suite 2050
Austin, TX 78701
Telephone: (512) 320-7200

Robert J. Herrington
herringtonr@gtlaw.com
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700

Becky L. Caruso
carusob@gtlaw.com
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Telephone: (609) 442-1196

*Counsel for Defendant Lincoln Property Co.*

/s/ *Leo D. Caseria*
Leo D. Caseria
lcaseria@sheppardmullin.com
Helen C. Eckert
heckert@sheppardmullin.com
SHEPPARD MULLIN RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006-6801
Telephone: (202) 747-1925

Arman Oruc
aoruc@goodwinlaw.com
GOODWIN PROCTOR LLP
1900 N Street, NW
Washington, DC 20036
(202) 346 4440

*Counsel for Defendants Essex Property Trust,*
*Inc. and Essex Management Corporation*

/s/ *J. Dino Vasquez*
J. Dino Vasquez
dvasquez@karrtuttle.com
KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, WA 98104-7055
Telephone: 206-224-8023

*Counsel for Defendant Security Properties*
*Inc.*

/s/ *Britt M. Miller*
Britt M. Miller
bmiller@mayerbrown.com
Daniel T. Fenske
dfenske@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 6006
Telephone: (312) 701-8663

*Counsel for Defendant Mid-America*
*Apartment Communities, Inc.*

/s/ *Edward C. Duckers*
Edward C. Duckers
ed.duckers@stoel.com
Charles H. Samel
charles.samel@stoel.com
STOEL RIVES LLP
1 Montgomery Street, Suite 3230
San Francisco, CA  94104
Telephone: (415) 617-8900

George A. Guthrie
gguthrie@wilkefleury.com
WILKE FLEURY LLP
621 Capitol Mall, Suite 900
Sacramento, CA  95814
Telephone: (916) 441-2430

*Counsel for Defendant FPI Management, Inc.*


/s/ *Sarah L. Hartley*
Sarah Hartley
sarah.hartley@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
1155 F Street, N.W.
Washington, DC 20004
Telephone: (303) 866-0363

Timothy R. Beyer
tim.beyer@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203
Telephone: (303) 866-0481

*Counsel for Defendant Cardinal Group
Holdings LLC*

/s/ *Kenneth Reinker*
Kenneth Reinker
kreinker@cgsh.com
Jeremy J. Calsyn
jcalsyn@cgsh.com
Leah Brannon
lbrannon@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1522

Joseph M. Kay
jkay@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2745

*Counsel for Defendants Cushman &
Wakefield, Inc. and Pinnacle Property
Management Services, LLC*


/s/ *Ian Simmons*
Ian Simmons
isimmons@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 29996
Telephone: (202) 383-5106

Eric Rodriguez
erodriguez@hoganlovells.com
Stephen McIntyre
smcintyre@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-8382

*Counsel for Defendant BH Management
Services, LLC*

/s/ *Heather T. Rankie*
Heather T. Rankie
hrankie@zellelaw.com
Judith A. Zahid
jzahid@zellelaw.com
ZELLE LLP
555 12th Street, Suite 1230
Oakland, CA 94607
Telephone: (415) 693-0700

*Counsel for Defendant Prometheus Real Estate Group, Inc.*


/s/ *Benjamin R. Nagin*
Benjamin Nagin
bnagin@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300

*Counsel for Defendant ConAm Management Corporation*


/s/ *Marisa Secco Giles*
Marisa Secco Giles
mgiles@velaw.com
VINSON & ELKINS LLP
200 West 6th Street, Suite 2500
Austin, TX 78701
Telephone: (512) 542-8781

Jason M. Powers
jpowers@velaw.com
VINSON & ELKINS LLP
845 Texas Avenue, Suite 4700
Houston, TX 77002
Telephone: (713) 758-2522

*Counsel for Defendant Campus Advantage, Inc.*


/s/ *Amy B. Manning*
Amy B. Manning
amanning@mcguirewoods.com
Angelo M. Russo
arusso@mcguirewoods.com
MCGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
Telephone: (312) 750-8904

*Counsel for Defendant D.P. Preiss Company, Inc.*


/s/ *Ryan Sandrock*
Ryan Sandrock
rsandrock@shb.com
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 544-1944

Lynn H. Murray
lhmurray@shb.com
SHOOK, HARDY & BACON L.L.P.
111 S. Wacker Dr., Suite 4700
Chicago, IL 60606
Telephone: (312) 704-7766

Laurie A. Novion
lnovion@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 559-2352

*Counsel for Defendant Camden Property Trust*

/s/ David T. Moran
David T. Moran
dmoran@jw.com
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: (214) 953-6051

Joseph A. Fischer, III
tfischer@jw.com
Joel R. Glover
jglover@jw.com
JACKSON WALKER LLP
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4226

*Counsel for Defendant Morgan Group, Inc.*

/s/ Ferdose Al-Taie
Ferdose Al-Taie
ferdose.al-taie@akerman.com
Ryan Krone
ryan.krone@akerman.com
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone: (214) 720-4308

*Counsel for Defendant ZRS Management, LLC*

/s/ David A. Walton
David A. Walton
dwalton@bellnunnally.com
Troy Lee (T.J.) Hales
thales@bellnunnally.com
BELL NUNNALLY & MARTIN, LLP
2323 Ross Avenue, Suite 1900
Dallas, TX 75201
Telephone: (214) 740-1445

*Counsel for Defendant RPM Living, LLC*

/s/ Stephen M. Medlock
Stephen M. Medlock
smedlock@velaw.com
Craig P. Seebald
cseebald@velaw.com
Molly E. McDonald
mmcdonald@velaw.com
Alex Rant
arant@velaw.com
Rami Abdallah E. Rashmawi
rrashmawi@velaw.com
VINSON & ELKINS LLP
2200 Pennsylvania Ave., N.W.
Suite 500 West
Washington, D.C. 20037
Telephone: (202) 639-6500

Christopher W. James
cjames@velaw.com
Madison Lo
mlo@velaw.com
VINSON & ELKINS LLP
555 Mission Street
Suite 2000
San Francisco, CA 94105
Telephone: (415) 979-6900

*Counsel for Defendant Windsor Property Management Company*

/s/ Carl W. Hittinger
Carl W. Hittinger
chittinger@bakerlaw.com
BAKER & HOSTETLER LLP
1735 Market Street, Suite 3300
Philadelphia, PA 19103
Telephone: (215) 564-2898

*Counsel for Defendant Equity Residential*

/s/ *Michael D. Bonanno*
Michael D. Bonanno
mikebonanno@quinnemanuel.com
Christopher Kercher
christopherkercher@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN,
LLP
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8225

*Counsel for Defendant Highmark Residential,
LLC*

/s/ *Benjamin I. VandenBerghe*
Benjamin I. VandenBerghe
biv@montgomerypurdue.com
Kaya R. Lurie
klurie@montgomerypurdue.com
MONTGOMERY PURDUE PLLC
701 Fifth Avenue, Suite 5500
Seattle, WA 98104
Telephone: (206) 682-7090

*Counsel for Defendant Thrive Communities
Management, LLC*

/s/ *James D. Bragdon*
James D. Bragdon
jbragdon@gejlaw.com
Sam Cowin
scowin@gejlaw.com
GALLAGHER EVELIUS & JONES LLP
218 North Charles St., Ste. 400
Baltimore, MD 21201
Telephone: (410) 347-1369

*Counsel for Bozzuto Management Company*

/s/ *David D. Cross*
David D. Cross
dcross@mofo.com
Jeffrey A. Jaeckel
jjaeckel@mofo.com
Robert W. Manoso
rmanoso@mofo.com
Sonja Swanbeck
sswanbeck@mofo.com
MORRISON & FOERSTER LLP
2100 L St, NW, Suite 900
Washington, DC 20037
Telephone: (202) 887-1500

*Counsel for Defendant UDR, Inc.*

/s/ *Todd R. Seelman*
Todd R. Seelman
todd.seelman@lewisbrisbois.com
Thomas L. Dyer
thomas.dyer@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
1700 Lincoln Street, Suite 4000
Denver, CO 80203
Telephone: (720) 292-2002

Rachel Tallon Reynolds
rachel.reynolds@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
1111 Third Avenue, Suite 2700
Seattle, WA 98101
Telephone: (206) 436-2020

*Counsel for Defendants Cortland Partners,
LLC and Mission Rock Residential, LLC*

- 22 -

/s/ *Edwin Buffmire*
Edwin Buffmire
ebuffmire@jw.com
Michael W. Moran
mmoran@jw.com
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: (214) 953-5939

Kevin Fulton
kevin@fultonlg.com
FULTON LAW GROUP, PLLC
7676 Hillmont Street, Suite 191
Houston, TX 77040
Telephone: (713) 589-6964

*Counsel for Defendant Allied Orion Group,
LLC*

/s/ *Diane R. Hazel*
Diane R. Hazel
dhazel@foley.com
FOLEY & LARDNER LLP
1400 16th Street, Suite 200
Denver, CO 80202
Telephone: (720) 437-2034

Elizabeth A. N. Haas
ehaas@foley.com
Ian Hampton
ihampton@foley.com
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
Telephone: (414) 271-2400

*Counsel for Defendant Sherman Associates,
Inc.*

/s/ *Yonaton Rosenzweig*
Yonaton Rosenzweig
yonirosenzweig@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 S Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone: (213) 655-9642

Fred B. Burnside
fredburnside@dwt.com
MaryAnn T. Almeida
maryannalmeida@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: (206) 622-3150

*Counsel for Defendants The Michaels
Organization, LLC and Interstate Realty
Management Company*

/s/ *Michael F. Murray*
Michael F. Murray
michaelmurray@paulhastings.com
PAUL HASTINGS LLP
2050 M Street, NW
Washington, DC 20036
Telephone: (202) 551-1730

Noah Pinegar
noahpinegar@paulhastings.com
PAUL HASTINGS LLP
200 Park Ave
New York, NY 10166
Telephone: (212) 318-6057

*Counsel for Defendant CA Ventures Global
Services, LLC*

/s/ *Yehudah L. Buchweitz*

Yehudah L. Buchweitz
Yehudah.Buchweitz@weil.com
Jeff L. White
Jeff.White@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8256

*Counsel for Brookfield Properties*
*Multifamily LLC (currently misnamed as*
*Brookfield Residential Properties LLC), as*
*manager for certain affiliated entities*


/s/ *Evan M. Fray-Witzer*

Evan M. Fray-Witzer
evan@cfwlegal.com
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, MA 02116
Tel.: (617) 426-0000
Fax: (617) 507-8043

*Counsel for Defendants WinnCompanies*
*LLC and WinnResidential Manager Corp.*


/s/ *Michael A. Parente*

Michael A. Parente
mparente@nexsenpruet.com
NEXSEN PRUET, LLC
1230 MAIN STREET, SUITE 700
COLUMBIA, SC 29201
TELEPHONE: (803) 253-8247
FAX: (803) 727-1482

*Counsel for Defendant Bell Partners, Inc.*


/s/ *Eliot Turner*

Eliot Turner
eliot.turner@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: (713) 651-5151

*Counsel for Defendant Kairoi Management,*
*LLC*


/s/ *Nicholas J. Giles*

Nicholas J. Giles
ngiles@mcguirewoods.com
J. Brent Justus
bjustus@mcguirewoods.com
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
Tel.: (804) 775-4760
Fax: (804) 775-1061

*Counsel for Defendant Simpson Property*
*Group LLC (improperly named as Simpson*
*Property Group, LLLP)*